Robert E. LACY et ux., Appellants,

v.

CARSON MANOR HOTEL, Inc., et al.,
Appellees.

No. 15146.

Court of Civil Appeals of Texas.

Dallas.

July 27, 1956.

Rehearing Denied Jan. 4, 1957.

John A. Erhard and Philip Wilson, Dallas, for appellants.

Max R. Rosenfield and Elihu E. Berwald, Dallas, for appellees.

YOUNG, Justice.

The suit of appellants in trial court was for damages based mainly on alleged fraudulent representations of appellees whereby plaintiffs were induced to enter into a written contract dated February 4, 1952 for exchange of properties located in Dallas and Jefferson Counties, to their injury. To said action defendants interposed the provisions of Rules 97(a) (Compulsory Counterclaims), T.C.P., and 166–A (Summary Judgment), Texas Rules of Civil Procedure, and upon hearing of the motion a take nothing judgment against plaintiffs was rendered, with result of this appeal.

The summary judgment complained of was entered December 22, 1955, and the nature of plaintiffs' points on appeal requires a somewhat detailed analysis of the respective pleadings as of that date. Plaintiffs' original petition was filed August 5, 1955 and alleged that prior to February 4, 1952 they were owners of a Dallas tourist motel, known as Riviera Courts (twenty units and manager's quarters) of a reasonable market value of $225,000, subject to liens of some $74,000; their equity amounting to approximately $150,000. That defendants were owners of a certain leasehold estate and personal property located in Port Arthur, Jefferson County, known as Pleasure Pier, and equipment, which defendants represented to plaintiffs as of a reasonable market value of $165,000 and that arrangements could be made with the City of Port Arthur for an additional three-year lease, thereby increasing market value of the property to $250,000; that said Pleasure Pier had been operated and conducted under a lease from the City of Port Arthur as a place of amusement and recreation by defendants for several years prior to February 1952, during which time defendants had become familiar with all phases of its operation, also requirements of the City and County officials relative thereto. In this connection, the property (Pleasure Pier) was located on an island across the inter-coastal canal from Port Arthur and accessible to the mainland only by causeway or drawbridge.

It was alleged that on February 4, 1952 a written contract was entered into by and between defendants Collis P. Irby and Carson Manor Hotel, Inc., and the Lacys for an exchange of their respective properties (Riviera Courts for Pleasure Pier and equipment) on basis of values and equities hereinabove mentioned; that as an inducement to plaintiffs for execution thereof, defendants represented that the gross receipts derived from Pleasure Pier during 1951 were in excess of $100,000, net income exceeding $20,000, with all rentals due the City of Port Arthur paid on a gross receipts basis; and further that the bridge giving access to the Pier would be kept open for traffic except for closing by the Federal Government for a period of two weeks during the year, beginning March 15, 1952—a time of minimum traffic to and from the pier and in the closed season of its operation; that additionally, plaintiffs were assured by defendants that the operation of Pleasure Pier would have a value far in excess of their own property given in exchange, provided the leasehold could be extended for three years; plaintiffs securing a commitment from the City of Port Arthur that such lease, if assigned to them, would be so extended on same terms and conditions as then existed between defendants and said City. As further inducement for exchange, plaintiffs alleged that defendants agreed to join in the execution of a $50,000 note to the Texas Bank & Trust Company for expenses incident to taking over of the amusement pier; said Bank on February 19, 1952 advancing such amount on promissory note signed by plaintiffs and Collis P. Irby, payable in installments secured by deed of trust on Pleasure Pier, chattel mortgage on its equipment, and subordinate lien on the Riviera Courts; plaintiffs thereafter moving to Port Arthur and preparing the Pier for expanded operation by expenditures exceeding $40,000, all in accordance with

the contract; and that if defendants' representations of value, volume of business, receipts, etc., of the Pier property had been true, such Bank note would have been duly paid.

They further pled that, contrary to representations of access bridge closing only for two weeks in March, same was closed to the Pier property in June 1952 during the peak of activities, causing plaintiffs to lose substantial revenues and become delinquent in payments on this Bank note; that thereafter in December 1952 they requested Texas Bank & Trust Company to defer payments until May 1953; being then advised that Collis P. Irby would have to join in any extension and that when the latter was approached, he refused to be party thereto, which refusal was part and parcel of defendants' scheme to defraud these plaintiffs. That thereafter the Bank brought suit on the note, on December 22, 1952 securing judgment and foreclosure; and that subsequently, at Sheriff's sale in Jefferson County, the Pleasure Pier was sold to defendants for $16,000. It was alleged that above outlined representations (concerning market value of the pier, gross and net receipts, also time of the two-weeks closing of access bridge) were fraudulently made and known by defendants to be untrue, with result of loss of the property; which property had been foreclosed on prior to a full discovery of the fraud; that their former property, Riviera Courts, had been sold to a third party by defendants, thereby precluding restoration of rights in equity; and sued for damages on full value thereof ($150,000); also for $50,000 as exemplary damages.

Defendants answered by plea in abatement, exceptions, and to the merits in detail; their sworn motion for summary judgment, filed October 27, 1955, reiterating in substance that the matters contained in plaintiffs' lawsuit had become res adjudicata perforce of aforesaid Texas Bank & Trust Company suit, as follows: That said cause No. 71362–A/G, filed in a District Court, Dallas County, October 25, 1952, was against the Lacys and these defendants on the $50,000 note dated February 18, 1952, and hereinabove mentioned; that defendants filed answer therein alleging that they were accommodation makers thereon, and praying for judgment over against Robert E. Lacy and Earlene Lacy, jointly and severally, for all amounts recovered against Carson Manor, Inc., and Collis P. Irby, citations duly issuing to plaintiffs on such cross-action; plaintiffs filing general denials to the Bank's suit, and similarly to the claim of defendants along with plea of coverture by Mrs. Lacy. That the case came to trial in December 1952, on motion of both Bank and these defendants for summary judgment, both on the main suit and also defendants' action over against plaintiffs; the latter appearing in person and by counsel, in open court stating they had no defense to the Bank's claim or to the cross-action of defendants; that the court thereupon rendered judgment against all parties defendant for $44,064.84, together with foreclosure of mortgage and deed of trust liens, etc.; also in favor of Carson Manor, Inc., and Collis P. Irby over against the Lacys for all sums that said accommodation makers may be required to pay on said judgment, which rendition was entered of record and is now final and unsatisfied; that as a result, defendants have been forced to pay the Texas Bank & Trust Company the sum of $30,451.98 and now have a valid and subsisting judgment against plaintiffs in the same amount (no payments having been made thereon), with interest from December 1952, or a total amount due them by plaintiffs of $38,572.48 and costs of court.

■ Movants then pled that the instant suit of plaintiffs for damages growing out of alleged fraudulent conduct of defendants arose out of the subject matter involved in the 1952 Bank suit and existed at time of filing of said suit and cross-action; and that pursuant to Rule 97(a), T.C.P., the same was barred, being a com-

pulsory counterclaim within meaning of the Rule and maintainable, if at all, in the Texas Bank & Trust Company suit as a claim arising "out of the transaction or occurrence that is the subject matter of the opposing party's claim"; additionally, defendants pled bar of the two-year statute of limitation, since the fraudulent representations on which suit is based were allegedly made about February 4, 1952, with the instant suit not instituted until August 5, 1955. Plaintiffs filed no verified answer to above sworn motion for summary judgment prior to or at time of the hearing of November 23, 1955 (judgment rendered on December 22), and in consequence were in no position to argue the existence of a genuine issue of fact at said trial. Broussard v. Austin Road Co., Tex.Civ.App., 276 S.W.2d 912.[1]

Our discussion may be somewhat shortened by a consideration of appellants' point and answering counterpoint with respect to the asserted bar of limitation; in which connection it is well settled that the two-year statute is applicable to a suit merely for damages arising from a written contract induced by fraud; Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438, 128 A.L.R. 757; 28 Tex.Jur. (Limitation of Actions), p. 124; Evans v. Southern Methodist University, Tex.Civ.App.,

87 S.W.2d 918, reversed on other grounds, 131 Tex. 333, 115 S.W.2d 622; also that the defense of limitation is maintainable under summary judgment procedure. Roe v. Sears, Roebuck & Co., 7 Cir., 132 F.2d 829; Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 150 F.2d 997, certiorari denied 326 U.S. 777, 66 S.Ct. 267, 90 L.Ed. 470, rehearing denied 326 U.S. 812, 66 S.Ct. 469, 90 L.Ed. 496, rehearing denied 327 U.S. 813, 66 S.Ct. 520, 90 L.Ed. 1038; and appellees' uncontroverted and sworn motion establishing that the alleged fraudulent representations, basis of present suit, were made more than two years prior to the filing thereof, the trial court did not err in concluding that said cause was barred by the applicable statute of limitation. "Where plaintiffs, at hearing on defendants' motion for summary judgment, filed no counter-affidavits, and made no showing other than as stated in their unsworn pleadings, and made no showing that affidavits were unavailable, they in effect admitted facts alleged in defendants' sworn affidavits supporting motion, and summary judgment was properly granted." Rolfe v. Swearingen, Tex.Civ.App., 241 S.W.2d 236, 237, syl. 2. See also Holland v. Lansdowne-Moody Co., Tex.Civ.App., 269 S.W.2d 478; Broussard v. Austin Road Co., supra. Judgment of the trial court is accordingly affirmed.[2]

1. On January 12, 1956 (date of their cost bond on appeal) plaintiffs filed a pleading denominated their "First Supplemental Petition in Answer * * * and Reply to the Defendants' Motion for Summary Judgment", amplifying the allegations of their August 1955 petition with special averments to effect that the fraudulent representations on part of defendants were not discovered by them until November 1953. Manifestly, this subsequently filed and unsworn pleading must be disregarded. Moreover, it raised no genuine issue of fact under Rule 166-A in view of defendants' sworn motion.

2. Above conclusion renders unnecessary a consideration of appellees' first counterpoint to effect that appellants' action was barred on principles of res adjudicata,

being a compulsory counterclaim, Rule 97(a), T.C.P., that should have been asserted as a defense to the cross-action of defendants in the 1952 litigation initiated by Texas Bank & Trust Company. The question of law thus posed is an interesting one and it is also our view that this further contention of appellees is well taken. Rule 97(a) provides: "Compulsory Counterclaims. A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, *which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.*" (Emphasis

ours.) Our rules of procedure are to be liberally construed, Rule 1, to the end that litigation may be conducted impartially and expeditiously resolved. Stone v. Texas Emp. Ins. Ass'n, 154 Tex. 21, 273 S.W.2d 59.

In the verified motion of appellees they say that in the 1952 Bank suit plaintiffs appeared and advised the court that they had no defense to the cross-action of defendants Collis P. Irby and Carson Manor Hotel, Inc.; whereas in the present suit plaintiffs claim heavy damages by reason of defendant Irby's refusal to aid in renewal of the $50,000 note, which wrongful act, additional to the fraud alleged, caused them to default in installment payments. To the extent that the present suit has validity, it would have constituted an off-set to the cross-action of appellees in the Bank litigation, and hence logically a compulsory counterclaim as arising "out of the transaction or occurrence that is the subject matter of the opposing party's (appellees') claim." Of course the trial court under Rule 174 would be authorized to later order a separate trial "of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues" *in furtherance of convenience or to avoid prejudice.* (Emphasis ours.)