The UPJOHN COMPANY, Appellant,

v.

PETRO CHEMICALS SUPPLIERS, INC., et al., Appellees.

No. 7816.

Court of Civil Appeals of Texas, Beaumont.

May 13, 1976.

Rehearing Denied June 3, 1976.

Finis E. Cowan, Houston, for appellant.

Richard DeGuerin, Houston, for appellees.

KEITH, Justice.

This is a commercial bribery case wherein Upjohn sought recovery of large sums of money from the corporate defendant and certain of its officers and directors. During the year 1968 and continuing until August of 1970, John Dugas was the purchasing agent of Upjohn at its LaPorte chemical plant. During that period Dugas caused Upjohn to purchase 136,686.25 feet of stainless steel pipe of varying dimensions from Petro Chem and Upjohn paid Petro Chem $1,310,151 therefor. This pipe cost Petro Chem $571,232; but, Petro Chem paid and Dugas accepted approximately $270,000 in cash from Petro Chem as a bribe.

Dugas was able to subvert the normal auditing and accounting systems of his employer and ordered large quantities of expensive stainless steel pipe which was not needed and much of this material was on hand at the time Dugas committed suicide on August 6, 1970.

Petro Chem was and is a closely held corporation and its officers and directors had knowledge, from the inception of the bribery scheme, of all of the details and ramifications thereof. Indeed, at the insistence of one of the directors, who was also a certified public accountant doing the corporate tax work, Petro Chem filed an amended return for the year 1968 to show payments to Dugas as commissions rather than as costs of goods sold as originally reported. Thereafter, the payments to Dugas were reported to the Internal Revenue Service on Form 1099 as commissions.

Upjohn brought suit alleging a conspiracy between Petro Chem and its officers with Dugas to defraud Upjohn for which it sought its actual and exemplary damages. The defendants answered by a general denial. The cause was submitted to the jury upon special issues and a judgment was entered in favor of Upjohn against Petro Chem in the sum of $32,924 [1] and against two of the individuals in the sum of $7,500 each, the latter awards being for exemplary damages. All further relief was denied and Upjohn has filed a limited appeal from the order overruling its amended motion for new trial. The defendants have perfected

1. The jury found in answer to Special Issues Nos. 5 and 6 that this sum had been paid by Upjohn to Petro Chem by mutual mistake, the items purchased being bolts, sandpaper, paint brushes, etc.

an appeal from the adverse portions of the judgment.

It is obvious from a reading of Upjohn's trial pleadings that its theory of the case was that set out and established in *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corporation,* 138 Tex. 565, 160 S.W.2d 509.

The trial court properly disregarded the jury answers to the first four special issues and held that Upjohn had established liability as a matter of law.[2] The main thrust of the Upjohn appeal is that the answers returned by the jury to Special Issues Nos. 7 and 8 as well as those to Nos. 10 and 11 are contrary to the great weight and overwhelming preponderance of the evidence in that the evidence "as a matter of law, compelled different answers" to said issues.

Special Issue No. 7 reads:

"What do you find from a preponderance of the evidence to be the amount of money paid by the Upjohn Company to Petro Chemicals Suppliers, Inc., during calendar years 1968, 1969 and 1970 for stainless steel pipe purchased by the Upjohn Company as a direct and proximate result of the monies paid to Dugas by the defendants herein?"

To which the jury answered: "$325,967.00."

Special Issue No. 8 reads:

"What do you find from a preponderance of the evidence to be the fair market value of the stainless steel pipe purchased by the Upjohn Company as a direct and proximate result of the monies paid to Dugas by the Defendants herein after discovery by Dugas' superiors of the payments to him?"

This was followed by a definition of fair market value; and, the jury answered the issue by stating "None."

We sustain Upjohn's point two and agree that these answers are contrary to the great weight and overwhelming preponderance of the evidence.

The evidence pertaining to Special Issue No. 7 is essentially undisputed, consisting of documentary evidence taken by an accountant from the books and records of Petro Chem and Upjohn. Plaintiff's records were tendered to defendants prior to trial and the testimony of the auditor was admissible under the voluminous records exception to the hearsay rule.

In *Cooper Petroleum Co. v. LaGloria Oil and Gas Co.,* 436 S.W.2d 889, 891 (Tex.1969), the Court used this language:

"We recognize that a tabulated schedule or summary of voluminous records may, in the discretion of the trial court, be admitted to expedite the trial and aid the trier of fact. See Wigmore on Evidence, 3rd ed. 1940, § 1230."

See also, 2 C. McCormick & R. Ray, Texas Law of Evidence § 1566, at 409, 413 (2d Ed. 1956), and *Moore v. Moore,* 430 S.W.2d 247, 252 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.).

It would unduly lengthen this opinion to set out the details of the testimony, it being sufficient to state that in connection with the testimony of Upjohn's auditor, Wise, Plaintiff's Exhibit No. 21 was admitted into evidence without objection. This exhibit tabulated the invoices relating to stainless steel pipe and the amounts paid pursuant thereto. It was shown that Petro Chem received from Upjohn during 1968, 1969, and 1970 (prior to Dugas' death), more than one million three hundred thousand dollars. Wise's examination of the books of Petro Chem revealed that its markup on the pipe sold to Upjohn was greatly in excess of its average markup on similar pipe sold to customers whose purchasing agents were not being bribed. We are unable to determine where the jury obtained the figure of $325,967 used in answer to Special Issue No. 7. We are of the opinion that the jury's answer to Special Issue No. 7 is contrary to the overwhelming preponderance of the evi-

---

2. This series of issues, identical except as to the name of an officer-director of Petro Chem, inquired if such officer "knew or should have known that such payments [by Petro Chem to Dugas] were likely to induce or would induce John Dugas to breach his duty to The Upjohn Company to the damage and detriment of The Upjohn Company?" Each issue was answered "We do not" but the trial court, upon an appropriate motion, disregarded the answers.

dence and the evidence is factually insufficient to support the answer thereto. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

There is even less support for the jury's answer to Special Issue No. 8. It seems uncontradicted in our record that Upjohn faced the problem of disposing of a large quantity of stainless steel pipe which it did not need. Over a period of almost two years, Wise endeavored to dispose of this surplus pipe. The record is complete with the details of his efforts and the testimony stands uncontradicted in the record. He finally sold the surplus for $429,463.

Again, finding the answer contrary to the weight and preponderance of the evidence, we set it aside. *Garza v. Alviar, supra.*

Having sustained Upjohn's points one and two, the judgment from which Upjohn appealed must be reversed. We have reviewed the remaining points in the Upjohn brief and find none which, if sustained, would require a rendition of the judgment in its favor; consequently, we need not consider points three and four complaining of the factual insufficiency of the jury's answers to Special Issues Nos. 10 and 11.

■ However, point five raises a question which we feel should be considered in view of the probability of another trial. Defendants were permitted to prove by Upjohn's auditor that it had a seventy percent markup or gross profit margin in its pharmaceutical business. We fail to see the materiality of such evidence and the possibility of injury to the plaintiff is apparent. Upon another trial, such evidence should not be admitted. See *Coca Cola Bottling Co. v. Tannahill,* 235 S.W.2d 224, 226 (Tex. Civ.App.—Fort Worth 1950, writ dism'd); 23 Tex.Jur.2d, Evidence § 157, at 242, 243 (1961). We do not find the language in *Turner v. Turner,* 385 S.W.2d 230, 238 (Tex. 1964), to be controlling or even persuasive.

Defendants have several cross-points challenging the award against Petro Chem based upon the finding of mutual mistake

(see fn. 1, supra), and the exemplary damages awards against the individual defendants, Rosenstein and Jackson.[3] Petro Chem also complains that the trial court did not award it an offset for the amount Upjohn admittedly owed Petro Chem upon unpaid invoices.

■ Although none of the defendants filed a motion for new trial, the defendants did note their exceptions to the entry of the judgment. We have jurisdiction to pass upon such cross-points. *Payne v. Lucas,* 517 S.W.2d 602, 608 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.).

■ Turning first to the claim of Petro Chem against Upjohn upon the unpaid invoices, we are of the opinion that this was a compulsory counterclaim under the provisions of Tex.R.Civ.P. 97(a) governed by subdivision (g) thereof since it was one which arose out of and was incident to and is connected with same. See *Powell v. Short,* 308 S.W.2d 532, 534 (Tex.Civ.App.—Amarillo, 1957, no writ). See also: 2 R. McDonald, Texas Civil Practice § 7.49, at 283, 285 (1970 Rev.Vol.); and *Skidmore v. Cook,* 417 S.W.2d 79, 81 (Tex.Civ.App.—San Antonio 1967, writ dism'd).

As indicated earlier, Petro Chem answered by a general denial only and had no pleadings seeking any affirmative relief. The trial court did not err in denying Petro Chem any recovery upon the invoices. McDonald, supra, at 286–287; *Harris v. Jones,* 404 S.W.2d 349 (Tex.Civ.App.—Eastland 1966, writ ref'd).

When we turn to Petro Chem's complaint of the award of damages by reason of the mutual mistake, we find that the sole attack is that such contractual claim was barred by limitations. The simple answer to the contention now advanced is that Petro Chem did not plead the statutes of limitation as required by Tex.R.Civ.P. 94, nor did it seek leave to file such a pleading after leave had been granted to Upjohn to

---

**3.** These complaints brought forward by the defendants are labeled "counter" points but we treat them as "cross-" points in accordance with the liberal rules relating to the filing of briefs. See discussion in *Harris v. Texas Employers' Insurance Association,* 447 S.W.2d 211, 214 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.).

file its trial amendment seeking recovery under the theory of mutual mistake.

█ Since no defensive plea was interposed, as required by the Rule, no error is shown. See and compare *Aubin v. Hunsucker,* 481 S.W.2d 952, 957 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.).

█ The individual defendants, Rosenstein and Jackson, complain of the allowance of exemplary damages when there was no award of actual damages. We sustain the point. The rule that exemplary damages may not be recovered unless plaintiff is shown to have sustained actual loss or injury is well settled by dozens of cases cited by the text writer in 17 Tex.Jur.2d, Damages § 177, at 243 (2d Ed. 1960), to which we refer.

Having found error in the proceedings in the court below, we enter judgment reversing and remanding the cause of Upjohn relating to the issues of commercial bribery; the judgment awarding Upjohn exemplary damages against the individual defendants, Rosenstein and Jackson, is reversed and this cause is remanded for a new trial. These errors affect a part only of the matter in controversy, and the issues as to commercial bribery and mutual mistake are severable, the judgment awarding Upjohn a recovery against Petro Chem under the theory of mutual mistake is severed from the remainder of the case and that portion of the judgment is affirmed. The portion of the judgment denying to Petro Chem a recovery upon the unpaid invoices is likewise severed from the remainder of the case and that portion of the judgment is affirmed.

Affirmed in part and in part reversed and remanded.