■ BELFONT SALES CORP., Appellant, v GRUEN INDUSTRIES, INC., et al., Respondents.—Order of the Supreme Court, New York County (David Edwards, Jr., J.), entered on or about December 24, 1984, which denied plaintiff's motion for partial summary judgment upon each of its 37 causes of action and

also dismissal of defendants' second to fifth counterclaims, modified, on the law, and plaintiff's motion granted solely to the extent of dismissing defendants' claims for incidental and consequential damages in the second and third counterclaims and dismissing the fifth counterclaim with prejudice, and otherwise affirmed, without costs and disbursements.

Plaintiff Belfont Sales Corp. is American distributor and sales agent for Remex Holdings, Ltd., a Hong Kong manufacturer of electronic watches. Defendants Gruen Industries, Inc., and Robert Tabakow, Inc., are both subsidiaries of Jewelcor, Inc., and apparently are wholesalers of watches. Defendants had previously purchased Remex watches through other distributors. Beginning in mid-1982, defendants agreed to purchase Remex watches through Belfont. All orders were made pursuant to the general terms of plaintiff Belfont's contract form. Paragraph I of these general terms provided, *inter alia*: "THE WARRANTY CONTAINED HEREIN IS EXCLUSIVE AND EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, WRITTEN, ORAL, IMPLIED, OR STATUTORY, INCLUDING BUT NOT LIMITED TO EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS. IN ADDITION, SELLER SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR INJURY OF ANY NATURE, WHETHER DIRECT, INDIRECT, CONSEQUENTIAL OR INCIDENTAL, IN CONNECTION WITH OR RESULTING FROM USE OF THE PRODUCTS."

Tabakow paid approximately $1.2 million for 42 lots of watches, totaling approximately 79,000 watches delivered between October 1982 and May 1983, while Gruen paid for approximately 23,000 watches received between December 1982 and July 1983. However, Tabakow failed to pay for the final 23 more lots, totaling 84,409 watches delivered after May 1983, in invoice amount of $1,289,632, and Gruen failed to pay for its 14 final orders, totaling approximately 33,000 watches delivered after July 1983, in invoice amount of $475,315. It appears defendants first commenced a separate action against plaintiff in either February or March 1984. Belfont, as plaintiff, commenced this action on March 29, 1984, with each of the 37 unpaid orders pleaded as a separate cause of action. The average price of the watches at issue is approximately $15.50 each.

Defendants' answer asserted that each of the 37 lots was nonconforming and unmerchantable and set forth five counterclaims. In the first counterclaim, Tabakow sought $1,960 for a credit previously issued by plaintiff. In the second and third counterclaims, Tabakow and Gruen alleged plaintiff had breached its sales contract by making untimely deliveries and

delivering goods of unmerchantable quality, whereby defendants sought $2,000,000 damages, including incidental and consequential damages. The fourth counterclaim by both defendants alleged plaintiff had defrauded them prior to August 1982 by falsely representing that Remex was number one in Hong Kong in quality control; that Remex had a quality control department which insured its watches were of high quality; that the watches which Belfont was to sell would have a defect rate no greater than 2%; that Remex had a plating process which could provide plating with a wearability equivalent of one micron of gold plating; that Remex could provide gold plating of up to three microns; that Remex sought to give the customer the highest possible quality; that the Remex plant in Hong Kong was one of the most modern in the world, employing the latest manufacturing equipment and quality control techniques; and that on the technical side, Remex was second to none, having the latest in quality control equipment. The fifth and final counterclaim pleaded a claim under 18 USC § 1962, the Federal Racketeer Influenced and Corrupt Organizations (RICO) provisions.

Plaintiff moved for partial summary judgment seeking judgment on all 37 causes of action and dismissal of defendants' four major counterclaims (2nd through 5th). Special Term denied summary judgment finding an issue of fact as to whether the defendants made an attempt to reasonably notify plaintiff of the alleged nonconformity of the watches pursuant to the parties' agreement, noting that their opposition papers revealed strong persuasive evidence of nonconformity.

It is clear plaintiff failed to justify dismissal of the breach of contract—warranty claims in defendants' counterclaims. Even in the case of accepted goods, the buyer may recover damages for nonconforming goods measured by the difference between the value of the goods accepted and the value of the goods as warranted (UCC 2-714). It is true that this UCC provision may be altered by the parties' agreement. Plaintiff seller asserts that the contractual limitation of its obligation to that of crediting buyers' accounts for defective goods bars any greater measure of recovery. However, such limitation may be unenforceable if the limited remedy fails of its essential purpose (UCC 2-719 [2]). Given defendants' large expenses incurred in handling defective watches—both in handling charges and retaining a testing service (amounting up to $500,000), defendants at least raised an issue of fact as to whether the limited remedy of crediting their accounts for the contract price of

defective watches may be enforced (*Cayuga Harvester v Allis-Chalmers Corp.,* 95 AD2d 5, 10-12).

Since the defendant buyers have a viable action for damages for alleged breach of the underlying contract of sale, the plaintiff seller is not entitled to summary judgment on its goods sold and delivered theory (*see,* UCC 2-717; *Created Gemstones v Union Carbide Corp.,* 47 NY2d 250). While partial summary judgment in an amount by which the plaintiff seller's claims exceeds the breach of warranty is permissible (*see, supra*), it is difficult, if not impossible, to determine the amount of such excess at this juncture of the action.

The possible unenforceability of the contractual limited remedy of credit to defendants' accounts does not mean that the contractual bar against claims for incidental and consequential damages, stated in paragraph I (*supra*), is also unenforceable. The two provisions appear in separate clauses of the contract form and are, in fact, dealt with by separate subdivisions of UCC 2-719. Subdivision 3 thereof permits exclusion of consequential damages unless the provision is unconscionable. In the commercial setting of these transactions, there is no basis to find any issue of fact as to unconscionability, and defendants fail to raise a prima facie case on this point (*Cayuga Harvesters v Allis-Chalmers Corp., supra,* pp 13-21). Thus, the claims for incidental and consequential damages, which are elements of the second and third counterclaims asserting breach of contract and warranty claims, are properly dismissed.

Insofar as defendants' fraud claim in the fourth counterclaim is concerned, the alleged misrepresentations that Remex had an effective quality control department; that the defect rate would not be greater than 2% and that Remex could provide gold plating of up to three microns may be regarded as misrepresentations of material existing facts (*Channel Master Corp. v Aluminum Ltd. Sales,* 4 NY2d 403, 407-408). While it may be doubtful that the sophisticated defendants who inspected Remex's plant and had previously bought Remex products will be able to establish reliance, such a finding would be premature upon the record herein at this time.

As to the fifth RICO counterclaim, defendants concede the cause of action is insufficient under the Second Circuit's decision in *Sedima S.P.R.L. v Imrex Co.* (741 F2d 482, *cert granted* — US —, 105 S Ct 901), requiring an allegation that the racketeering involved led to a prior criminal conviction. They argue that the claim should be dismissed without prejudice so as to allow reinstatement if the Supreme Court

reverses the Second Circuit. However, this court, in *Greenview Trading Co. v Hershman & Leicher* (108 AD2d 468), found that State courts do not have concurrent jurisdiction with the Federal courts over RICO claims. Thus, dismissal of the fifth counterclaim should be with prejudice. Concur—Carro, J. P., Asch, Lynch and Ellerin, JJ.