Charles HAMPTON, Plaintiff,

v.

Hal LONG, Bruce Morris, Ewing
Adams, and Texas American
Bank—Town North, Defendants.

Civ. A. No. TY–84–541–CA.

United States District Court,
E.D. Texas,
Tyler Division.

March 28, 1988.

Carl A. Generes, Dallas, Tex., for plaintiff.

Rex A. Nichols, Nichols, Bailey & Watson, Longview, Tex., for defendant Bruce Morris.

Ewing Adams, Longview, Tex., pro se.

Andy Tindel, Hill, Perry, & Sloan, Longview, Tex., for Hal Long.

## ORDER

JUSTICE, Chief Judge.

Before the court in the above-entitled and numbered action is the motion of one defendant, the Texas American Bank—Town North (Bank), for summary judgment. For the reasons set forth below, the motion shall be granted in part, and denied as to the rest.

In his complaint, plaintiff Charles Hampton (Hampton) alleges that the defendants violated the 1934 Securities Exchange Act, 15 U.S.C. §§ 78a *et seq.*, the Texas Securities Act, Tex.Civ.Stat. arts. 581–1 *et seq.*, various Texas stock fraud statutes, *see* Tex.Bus. & Commerce C. §§ 27.01 *et seq.*, and the civil provisions of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* Hampton recites that through various misrepresentations, the individual defendants, all of whom were agents and officers of the Bank, fraudulently induced him to purchase shares in three companies (here collectively called "Judson"), to loan money to these companies, and to guarantee their loans with the Bank. Moreover, he alleges the existence of an underlying scheme, conspiracy, and plan among the defendants to engage in such fraudulent conduct. Hampton asserts that soon after he invested his money and pledged his guaranty, the Judson enterprises ceased to be economically viable, and Hampton was left with worthless stock and personal liability for at least some of Judson's debts.

The Bank is not alleged to have engaged in any fraudulent acts distinct from those of its agents. However, Hampton asserts that Bank personnel were used in furtherance of the purported scheme, and that the Bank "directly and indirectly benefited" from its execution. In its answer, the Bank generally denies Hampton's charges. As for the unlawful conduct of which its employees are accused, the Bank further pleads that the individual defendants had gone beyond the scope of their agency relationship with the bank in personally carrying out and directing it. Moreover, the Bank has counterclaimed against Hampton for a $732,079.85 debt, which allegedly arose from the transactions at issue in Hampton's case in chief. Indeed, the Bank already has secured a judgment for this sum against Hampton and others, jointly and severally. That judgment, won in an earlier action in Texas state court, remains unsatisfied. The Bank's counterclaim also seeks interest, attorney's fees, and costs in connection with its recovery of the $732,079.85 debt.

The summary judgment motion now before the court respects the Bank's status as a defendant, not as a counterclaimant. From the record, certain uncontested facts emerge.

First, the Bank filed an action against Hampton and others in the District Court of Gregg County, Texas, in 1983. In its state court petition, the Bank recited that it held two promissory notes from a Judson company, that Hampton and others had guaranteed these notes, and that Judson had defaulted. The principal due on the notes totalled $510,000.00. *See* Plaintiff's Original Petition, *Town North National Bank v. Judson Rod Company, Inc.,* Cause No. 83–2187A, District Court of Gregg County, Texas (filed August 26, 1983), Exhibit A to the Bank's Motion for Summary Judgment. In the suit, Hampton had interposed a general denial to the

Bank's complaint, but he did not raise the issue of the Bank's allegedly fraudulent conduct in any of his pleadings. *See* Defendants' Original Answer and General Denial, *Judson Rod, supra* (filed Sept. 5, 1983), Exhibit B to the Bank's Motion.

Second, the Bank filed a motion for summary judgment against Hampton in the *Judson Rod* case. The Bank's evidence on that motion showed that Hampton and others acted as guarantors of Judson's debts on the notes, and that the notes' principal balances (plus interest thereon) were due and unpaid. *See* Plaintiff's Motion for Summary Judgment, *Judson Rod, supra* (filed May 14, 1984), Exhibit C to the Bank's Motion. Summary judgment was later entered for the Bank against Judson, Hampton, and other guarantors, jointly and severally. *See* Order of Summary Judgment, slip op. at 2, *Judson Rod, supra* (June 29, 1984), Exhibit F to the Bank's Motion. This judgment amounted to $732,079.85, a sum that represented $510,000.00 in unpaid principal, plus $222,079.85 in interest. Additional statutory interest was assessed on the judgment, and it accrued at an annual rate of ten percent from June 29, 1984. *Id.*

Third, two months after the Bank filed the *Judson Rod* petition, Hampton executed an affidavit, in which he averred that one of the individual defendant Bank employees, Hal Long, owned five percent of Judson. According to the affidavit, Hampton had known that it was illegal for an officer of the Bank to own the Judson shares outright. Therefore, Hampton maintained, Long resorted to the subterfuge of having his shares issued to a third-party straw man.[1] Hampton's affidavit further states that he and all of Judson's other shareholders were aware of Long's hidden interest in the companies. *See* Affidavit of Charles W. Hampton, dated October 25, 1983, Exhibit H to the Bank's Motion. Additionally, contemporaneous affidavits by two other nonparty witnesses

made substantially the same contentions that were set forth in the Hampton affidavit. *See* Affidavit of Richard Pickell, dated July 27, 1983; Affidavit of Kenneth Leath, dated July 27, 1983, Exhibit I to the Bank's Motion. On the basis of the affidavits, the Bank argues here that, while *Judson Rod* was pending against him years ago, Hampton was aware of the activity that is at issue in the federal case now before the court.

Hampton does not seriously dispute the evidence summarized above. Instead, the contested issues presented by the Bank's summary judgment motion concern the legal consequences of the facts adduced. The Bank's principal argument is that, under the Texas compulsory counterclaim rule, Tex.R.Civ.P. 97(a), Hampton's failure to plead the Bank's frauds in the *Judson Rod* suit forecloses his opportunity to litigate these claims against the Bank now.

The Texas compulsory counterclaim rule directs that

> [a] pleading shall state as a counterclaim any claim within the jurisdiction of the Court, not the subject of the pending action, which at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence which is subject matter of the opposing party's claim and is not required for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction.

Tex.R.Civ.P. 97(a). In its language and effect, Fed.R.Civ.P. 13(a) imposes virtually identical requirements. In this connection, the Bank points out that Hampton had made only a general denial to the petition in *Judson Rod*, even though he could have asserted state law causes of action against the Bank—based on the Texas Securities Act, Texas stock fraud statutes, and Texas common law fraud—which were fully litigable in that case. Moreover, the Bank contends that Hampton's theories of liabili-

---

1. One of the Bank's summary judgment arguments is that this alleged behavior shows that Long was acting without the Bank's authorization, and thus beyond the scope of his agency relationship with the Bank. Viewed in the light most favorable to the plaintiff, however, this evidence does not rule out the possibility that the Bank directed or ratified the acts of which Long is accused.

ty under federal law—RICO and the 1934 Securities Exchange Act—were within the concurrent jurisdiction of the Gregg County court in *Judson Rod*, and thus, at the time, were also fully litigable. Accordingly, the Bank asserts that Hampton cannot press any of his claims against it in federal court.

■ It is necessary to distinguish between Hampton's pendent Texas law claims, and his causes of action under federal securities law and RICO. With respect to one of Hampton's federal claims, the District Court of Gregg County clearly never had jurisdiction to adjudicate Hampton's 1934 Securities Exchange Act cause of action. Section 27 of the Act plainly states that the federal courts "shall have *exclusive jurisdiction* of . . . *all suits* in equity and actions at law brought to enforce any liability or duty created by [the Act]." 15 U.S.C. § 78aa (emphasis added); *see also Piambino v. Bailey*, 610 F.2d 1306, 1333 (5th Cir.1980); *Great Western United Corporation v. Kidwell*, 577 F.2d 1256, 1270–71 (5th Cir.1978). Thus, Hampton's federal securities claims never were litigable in the *Judson Rod* court, and Tex. R.Civ.P. 97(a) can have no preclusive effect on them here.

■ A more problematic issue is whether the District Court of Gregg County—or any state court—has concurrent jurisdiction over violations of the federal RICO statute. Rule 97(a) would bar litigation of Hampton's RICO claim here, if the Texas court could have heard it. In support of its argument that RICO confers concurrent jurisdiction, the Bank cites only the holding of *Greenview Trading Company v. Hershman & Leicher, P.C.*, 123 Misc.2d 152, 473 N.Y.S.2d 722 (N.Y.Sup.Ct.1984). At most, this decision from a state trial court outside of Texas is only of persuasive value. But what renders the use of this case very unconvincing is the Bank's failure also to mention that it was later *reversed* by a New York appellate court.[2] *See Greenview Trading Company v. Hershman & Leicher, P.C.*, 108 A.D.2d 468, 489 N.Y. S.2d 502 (N.Y.App.Div., 1st Dept.1985). Moreover, subsequent New York appellate cases have also repudiated the *Greenview Trading* trial court opinion. *See, e.g., Simpson Electric Corporation v. Leucadia, Inc.*, 128 A.D.2d 339, 515 N.Y.S.2d 794 (N.Y.App.Div., 2d Dept.1987); *Belfont Sales Corporation v. Gruen Industries, Inc.*, 112 A.D.2d 96, 100, 491 N.Y.S.2d 652, 655 (N.Y.App.Div., 1st Dept.1985); *see also Cullen v. Margiotta*, 811 F.2d 698, 732 (2nd Cir.1987) (construing New York law).

Nevertheless, as a national question of law, the problem of exclusive *versus* concurrent jurisdiction over federal civil RICO claims is far from settled.[3] *Compare Cullen v. Margiotta, supra; Intel Corporation v. Hartford Accident and Indemnity Company*, 662 F.Supp. 1507, 1509–12 (N.D. Cal.1987); *Broadway v. San Antonio Shoe, Inc.* 643 F.Supp. 584, 586–87 (S.D. Tex.1986); *Massey v. City of Oklahoma City*, 643 F.Supp. 81, 84 (W.D.Okla.1986); *Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692, 701 (S.D.N.Y.1985); *Kinsey v. Nestor Exploration Limited*, 604 F.Supp. 1365, 1370–71 (E.D.Wash.1985); *Ideal Stencil Machine and Tape Company v. Merchiori*, 600 F.Supp. 185, 190 (S.D.Ill.1985); *County of Cook v. Midcon Corporation*, 574 F.Supp. 902, 910–12 (N.D.Ill.1983), *aff'd on other grounds*, 773 F.2d 892 (7th Cir.1985); *Main Rusk Associates v. Interior Space Constructors*, 699 S.W.2d 305, 307 (Tex.App.—Houston [1st Dist.] 1985,

---

**2.** It is deplorable that the Bank's counsel were not more assiduous in briefing this issue. They are hereby admonished that future lapses of this character will render them vulnerable to the imposition of sanctions under Fed.R.Civ.P. 11.

**3.** The sharp division of various courts over the state court jurisdiction issue is rooted in the circumstances surrounding RICO's enactment. On this point, there was no underlying congressional intent, but only congressional inattention. RICO's principal draftsman, Professor G.

Robert Blakey (who was chief counsel of the Senate Subcommittee on Criminal Laws and Procedures when RICO was proposed) has been quoted as admitting that "[t]here is nothing on the face of the statute or in the legislative history [concerning concurrent jurisdiction]. To my knowledge, *no one even thought of the issue.*" *See* Flaherty, Two States Lay Claim to RICO, Nat'l L.J., May, 1984, at 3, col. 1 (emphasis added).

no writ); *Simpson Electric, supra; Belfont Sales, supra; Greenview Trading Company v. Hershman & Leicher, P.C.,* 108 A.D.2d 468, 489 N.Y.S.2d 502 (N.Y. App.Div., 1st Dept.1985); *Maplewood Bank & Trust Company v. Acorn, Inc.,* 207 N.J.Super. 590, 593–94, 504 A.2d 819, 820–21 (N.J.Law Div.1985); *LaVay Corporation v. First National Bank of Maryland, cited in County of Cook v. Midcon Corporation,* 773 F.2d 892, 905 n. 4 (7th Cir.1985) (all holding that civil RICO actions fall within the exclusive jurisdiction of the federal courts) *with Brandenburg v. First Maryland Savings and Loan, Inc.,* 660 F.Supp. 717, 730–34 (D.Md.1987); *Contemporary Services Corporation v. Universal City Studios,* 655 F.Supp. 885 (C.D. Cal.1987); *Printing Mart–Morristown, Inc. v. Rosenthal,* 650 F.Supp. 1444, 1448–50 (D.N.J.1987); *Carman v. First National Bank,* 642 F.Supp. 862, 864 (W.D.Ky. 1986); *HMK Corporation v. Walsey,* 637 F.Supp. 710, 717 (E.D.Va.1986); *Karel v. Kroner,* 635 F.Supp. 725, 729–31 (N.D.Ill. 1986); *Charles Kurz Company v. Lombardi,* 595 F.Supp. 373, 381 n. 11 (E.D.Pa. 1984); *Luebke v. Marine National Bank,* 567 F.Supp. 1460, 1462 (E.D.Wis.1983); *Cianci v. Superior Court,* 40 Cal.3d 903, 916, 221 Cal.Rptr. 575, 575–81, 710 P.2d 375, 376–82 (1985) (all holding that state courts have concurrent jurisdiction over federal RICO claims).

To date, the decisions rendered by the federal appellate courts on this question have been far from definitive. Most recently, the U.S. Court of Appeals for the Fifth Circuit specifically declined to decide the issue. *J.M. Muniz, Inc. v. Mercantile Texas Credit Corporation,* 833 F.2d 541, 544 (5th Cir.1987). Additionally, the U.S. Court of Appeals for the Seventh Circuit twice considered the problem, and it criti-cized the notion that RICO jurisdiction was exclusively federal. But it did not go so far as to hold that RICO confers concurrent jurisdiction. *See Henry v. Farmer City State Bank,* 808 F.2d 1228, 1232–37 (7th Cir.1986); *County of Cook v. Midcon Corporation,* 773 F.2d 892, 898 (7th Cir. 1985) ("It is by no means clear that federal courts have exclusive jurisdiction to hear RICO claims.").

■ For the purposes of considering the Bank's motion for summary judgment, it appears that the best guidance comes from the U.S. Court of Appeals for the Second Circuit. In *Cullen v. Margiotta, supra,* that court held that civil RICO jurisdiction was exclusively federal, at least with respect to the New York state judicial system. The Second Circuit's opinion was based on the decisional law of intermediate New York appellate courts, which had refused to accept RICO jurisdiction. *Id.* at 732, citing *Belfont Sales,* 112 A.D.2d at 100, 491 N.Y.S.2d at 655; *Greenview Trading,* 108 A.D.2d at 470–73, 489 N.Y.S.2d at 504–06. A similar situation obtains in the action under consideration here. A Texas appellate court unequivocally has held that state courts have no jurisdiction over RICO violations. *See Main Rusk Associates, supra,* at 307; *see also Broadway v. San Antonio Shoe, Inc., supra,* at 586–87 (adopting the *Main Rusk Associates* holding). This court will not foist RICO causes of action on unwilling Texas courts by ruling otherwise. Thus, it is held that Hampton's RICO claim could not have been entertained as part of a counterclaim in *Judson Rod.* Accordingly, it is not precluded here by operation of Tex.R.Civ.P. 97(a).[4]

■ Turning to Hampton's state law claims, it is clear that they grew out of the

4. Because under Texas law RICO jurisdiction is exclusively federal, summary judgment on the RICO *claim* shall be denied. However, as discussed in greater detail below, Hampton will be estopped from alleging and proving one of the predicate acts set forth in the RICO count of his complaint. But preclusion of that limited issue is not fatal to the RICO claim. RICO prohibits the receipt or investment of "any income derived, directly or indirectly, from a pattern of racketeering activity," as well as any conspiracy to receive or invest such income. 18 U.S.C. §§ 1962(a), 1962(d). A "pattern" of racketeering activity consists in "at least two acts of racketeering activity" within the last ten years. 18 U.S.C. § 1961(5). Among other acts, a RICO violation can be predicated on "any offense involving ... fraud in the sale of securities." 18 U.S.C. § 1961(1)(D). Because Hampton alleges three predicate acts involving the sale of stock, as well as an underlying conspiracy, he sufficiently has pled a cause of action under RICO.

same transactions which properly were the subject of the *Judson Rod* controversy, and that Tex.R.Civ.P. 97(a) applies to them. As an initial matter, the uncontested evidence reveals Hampton's awareness, at the time that the *Judson Rod* suit was pending, of the extent of the Bank's participation in the alleged scheme concerning the Judson companies. Thus, for Rule 97(a) purposes, Hampton's state law claims had "matured" during the *Judson Rod* proceedings. *See* Affidavit of Charles W. Hampton, dated October 25, 1983, Exhibit H to the Bank's Motion. Additionally, there is no evidence that Hampton's fraud and securities claims against the Bank were the subject of another suit when the *Judson Rod* petition was filed.

Within the meaning of Tex.R.Civ.P. 97(a), the concept of "same transaction" is subject to a broad construction. *Griffin v. Holiday Inns of America*, 496 S.W.2d 535, 539 (Tex.1973); *Fajkus v. First National Bank of Giddings*, 735 S.W.2d 882, 887 (Tex.App.—Austin 1987); *Jack H. Brown & Company v. Northwest Sign Company*, 718 S.W.2d 397, 398–99 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Bailey v. Travis*, 622 S.W.2d 143, 144 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.); *Corpus Christi Bank & Trust Company v. Cross*, 586 S.W.2d 664, 666–67 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Upjohn Company v. Petro Chemicals Suppliers, Inc.*, 537 S.W.2d 337, 340 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.); *Burris v. Kurtz*, 462 S.W.2d 347, 348 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). " '[T]ransaction' has a flexible meaning that 'may comprehend a series of many occurrences, depending not so much upon the immediateness of their occurrence as upon their logical relationship.' " *Jack H. Brown & Company, supra*, at 399, quoting *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). In short, the Texas compulsory counterclaim rule requires only "that both claims concern *at least some of the same facts.*" *Jack H. Brown & Company, supra*, at 400 (emphasis added), *citing Plant v. Blazer Financial Services, Inc.* 598 F.2d 1357, 1360–61 (5th Cir.1979).

On the face of Hampton's pleadings, it is clear that his liability in *Judson Rod* had grown directly out of the same circumstances and dealings that are alleged in this action. Thus, according to the liberal definition of "same transaction" under Texas law, all of Hampton's state law claims properly should have been joined in *Judson Rod.*

Finally, Hampton and the Bank are directly adverse, as they were in the Gregg County action, and their respective capacities as parties are unchanged. Moreover, the *Judson Rod* court would have possessed jurisdiction over all of the parties who have been brought before this court. In short, all of the basic tests for application of the Texas compulsory counterclaim rule in the Gregg County action would have been met. *See generally Schero v. Manges*, 648 S.W.2d 358 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Madden v. Harlandale Bank*, 574 S.W.2d 590 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.).

Hampton's pleading—or, more precisely, his failure to plead—in *Judson Rod* disentitles him to any recovery on his pendent state fraud and securities claims. As a general rule, if a defendant, like Hampton, had filed only a general denial to the complaint against him, he is precluded from recovering affirmative relief or offset for any claim of his own that grew out of the transaction that is at issue in the case in chief. *See e.g., Upjohn Company v. Petro Chemicals Suppliers, Inc.*, 537 S.W.2d 337, 340 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.); *see also Lacy v. Carson Manor Hotel, Inc.*, 297 S.W.2d 367 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r.e.). Moreover, "[w]here a party fails to assert his counterclaim in the initial suit, he is precluded from *thereafter* pursuing the suit." *Burris v. Kurtz*, 462 S.W.2d 347, 348 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.) (emphasis added); *see also Lacy v. Carson Manor Hotel, Inc., supra*. Accordingly, summary judgment shall be granted to the Bank with respect to all of Hampton's claims under Texas law.

■ Recurring to the federal RICO cause of action, Rule 97(a) and the doctrine of collateral estoppel also bar Hampton's pleading and proving one related factual issue, namely, the alleged fraudulent inducement to guarantee Judson's loans from the Town North Bank.[5] Because this issue is only one of a multiplicity of predicate racketeering acts alleged in the RICO count of the complaint, its estoppel does not foreclose litigation of the entire RICO claim.

■ Under Tex.R.Civ.P. 97(a), Hampton should have raised this contention in his pleadings in *Judson Rod* as a compulsory counterclaim. *See Upjohn Co. v. Petro Chemicals Suppliers, Inc., supra,* at 340. His failure to do so constitutes a waiver of the right to pursue it in subsequent proceedings. *Burris v. Kurtz, supra,* at 348. Moreover, the doctrine of collateral estoppel in the Fifth Circuit prevents the relitigation, between identical parties, of an issue of fact that previously had been precluded by a valid and final judgment. *J.M. Muniz, Inc. v. Mercantile Texas Credit Corporation,* 833 F.2d 541, 544 (5th Cir. 1987); *United States v. Price,* 750 F.2d 363, 365 (5th Cir.1985).

■ Where a factual issue has been determined in prior state court proceedings, the law of the forum state determines whether and how the collateral estoppel doctrine applies. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *J.M. Muniz, Inc., supra,* at 543; *Southern Jam, Inc. v. Robinson,* 675 F.2d 94 (5th Cir.1982); 28 U.S.C. § 1738. Texas law controls here. It forbids the relitigation, in a second suit where the adversaries are identical, of a disputed fact that was fully resolved in an earlier action. In Texas, the doctrine applies even where the issue sought to be relitigated is crucial to the proof of an entirely different cause of action in the second suit. *See J.M. Muniz, supra,* at 544; *Bonniwell v. Beech Air-*

*craft Corporation,* 663 S.W.2d 816, 818 (Tex.1984); *Wilhite v. Adams,* 640 S.W.2d 875, 876 (Tex.1982); *Benson v. Wanda Petroleum Company,* 468 S.W.2d 361, 362 (Tex.1971).

Here, Hampton and the Bank were adversaries in the earlier *Judson Rod* case. Hampton had a full opportunity to plead the Bank's fraudulent inducement to guarantee the Town North Bank loans, and he failed to exploit it. Preclusion under Tex. R.Civ.P. 97(a) functions as a final determination of the issue. Accordingly, Hampton shall be estopped from litigating the Bank loan issue here, because Fifth Circuit law does not permit the resuscitation of foreclosed factual issues in the guise of predicate RICO acts. *See J.M. Muniz, Inc., supra,* at 544. It is important to note, however, that Hampton is not estopped from pleading and proving the fraudulent inducement to guarantee Judson's loans with *other* banks, as predicate acts, because RICO's exclusive jurisdiction placed them beyond the reach of the Gregg County court.

In a subsidiary argument, the Bank asserts that Hampton's Securities Exchange Act and RICO claims are cut off by a purported statutory limitation period of two years. This contention is quickly disposed of.

Recently, the U.S. Supreme Court created a four-year limitation period, from the time of accrual, for all civil RICO claims. *See Agency Holding Corporation v. Malley–Duff & Associates,* — U.S. —, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Hampton's complaint was filed in November, 1984, and its allegations grow out of transactions occurring no earlier than March, 1981. Thus, the RICO claims fall within the four-year limitation period.

The 1934 Securities Exchange Act does not provide a statute of limitations period. Private federal actions for securities fraud are generally subject to the limitations periods prescribed by the relevant state securi-

---

5. *See* Complaint, at ¶ 24.e., where it is charged that the Bank and others fraudulently *"caus[ed] plaintiff to guarantee bank loans to one or more of the Judson companies, including loans from*

*Town North,* First National Bank of Longview and First National Bank of Marshall, Texas" (emphasis added).

ties fraud ("blue sky") laws. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *White v. Sanders*, 650 F.2d 627 (5th Cir.1981). Under Texas law, the blue sky limitations period is five years after the purchase of securities, or three years after discovery of the fraud. Tex.Stat. art. 581–33(H). Approximately three-and-one-half years elapsed between the date on which Hampton first bought Judson securities and the filing of his complaint, and the Bank has failed to produce evidence showing that discovery of the alleged fraud occurred more than three years before the commencement date. Therefore, the motion for summary judgment on statute-of-limitations grounds shall be denied.[6]

With respect to all of the points raised on its motion for summary judgment, the Bank has the burden of showing that there exists "no genuine issue of material fact," and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Erco Industries, Ltd. v. Seaboard Coastline R. Co.*, 644 F.2d 424, 428 (5th Cir.1981); *Kellerman v. Askew*, 541 F.2d 1089, 1092 (5th Cir.1976); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §§ 2725 and 2727 (1983). With respect to its arguments concerning the preclusive effect of the *Judson Rod* suit, the Bank has demonstrated that there are no issues of fact, and that as a matter of law it is entitled to judgment on all pendent claims made under Texas statutes and Texas common law. For the same reasons, it also shall be granted judgment on one predicate RICO act, the alleged inducement of Hampton to guarantee Town North Bank loans. However, the Bank has not shown that it is entitled to judgment on any aspect of the federal securities fraud claim, nor on the RICO cause of action and the remaining predicate acts alleged thereunder. Similarly, the Bank's point about the RICO limitation period lacks merit.

With respect to the Bank's remaining arguments, which concern the Securities Exchange Act statute of limitations, the binding effect of unlawful acts by the Bank's agents, and Hampton's supposed failure to establish that the Bank itself violated RICO, the ambiguities in the pleadings and evidence must be construed in the light most favorable to Hampton, who is the non-moving party here. *Erco, supra*, at 428; *Harrison v. Byrd*, 765 F.2d 501, 504 (5th Cir.1985); *Murphy v. Georgia–Pacific Corporation*, 628 F.2d 862, 866 (5th Cir.1980); *Kennett–Murray Corporation v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). According to this standard, the Bank must establish its right to judgment against Hampton so clearly that Hampton cannot prevail "under any discernible circumstances." *Everhart v. Drake Management, Inc.*, 627 F.2d 686, 690 (5th Cir.1980). At this point, the factual record is not sufficiently developed, and it is impossible to say that Hampton would not prevail under any discernible circumstances. Therefore, it is appropriate to let these issues be resolved at trial, where the court will have the benefit of all the underlying testimony and evidence.

Accordingly, it is

ORDERED that the motion of the defendant, Texas American Bank—Town North, for summary judgment on all pendent causes of action based on Texas state law shall be, and it is hereby, GRANTED. It is further

ORDERED that the motion of the defendant, Texas American Bank—Town North, for summary judgment on the cause

---

6. In a subsequently filed supplemental motion for partial summary judgment, the Bank argues that the holding of the U.S. Court of Appeals for the Fifth Circuit in *Atkinson v. Andarko Bank & Trust Company*, 808 F.2d 438 (5th Cir.1987), directs that this court find that the Bank was not a racketeering enterprise within the meaning of 18 U.S.C. § 1961(4). This leg of the Bank's motion is premature, and it shall be denied. It may very well be that the racketeer-ing enterprise alleged by Hampton does not exist as an entity "separate and apart" from the unlawful activities of the Bank. Furthermore, the Bank's defense, that the allegedly unlawful acts of its agents and officers were not committed within the scope of their agency relationship with the Bank, may prove to be meritorious after further factual development of the case. At this point, however, the record is scanty.

of action based on the federal Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, shall be, and it is hereby, GRANTED to the limited extent that the plaintiff is precluded from pleading and proving that he was fraudulently induced to guarantee the promissory notes and loans that were at issue in *Town North National Bank v. Judson Rod Company, Inc.*, Cause No. 83–2187A, District Court of Gregg County, Texas. It is further

ORDERED that the motions of the defendant, Texas American Bank—Town North, for summary judgment on all other claims and issues shall be, and they are hereby, DENIED.