OPINION OF THE COURT
Leon A. Beerman, J.
Plaintiff, Simpson Electric Corp., moves for an order dismissing the fifth and sixth counterclaims of defendant, Lexlcadia, Inc., upon the grounds that (a) the court lacks jurisdiction over the subject matter of the counterclaims and (b) these counterclaims may not be properly interposed in this action.
This action was commenced by Simpson with the service of a summons and complaint on May 11, 1984. On May 31, 1984, Leucadia served an answer and counterclaims. On June 11, 1984, Simpson served an amended complaint seeking damages *313 in excess of $12,000,000 in connection with electric renovation work it allegedly performed in 1976 and 1977 at 315 Park Avenue South, New York, New York. In its amended answer, dated July 5, 1984, Leucadia interposed six counterclaims, the fifth based upon a violation by Simpson of section 1961 et seq. of title 18 of the United States Code, the Racketeer Influenced and Corrupt Organizations Act (RICO), and the sixth, based upon fraud.
With respect to the fifth counterclaim, the basis of plaintiff’s motion lies in his contention that an action based upon the violation of RICO must be brought in United States District Court.
In opposition, defendant cites the recently decided case of Greenview Trading Co. v Hershman & Leicher (123 Misc 2d 152) for the proposition that State courts are a proper forum for civil RICO claims. In Greenview (supra), Justice Saxe presents an interesting and thoughtful analysis with regard to the right of a State court to assume subject matter jurisdiction over a Federal cause of action.
To briefly recapitulate the crux of that court’s analysis, there is a presumption that a State court may assume subject, matter jurisdiction over a Federal cause of action absent a provision by Congress of disabling incompatibility between the Federal claim and the State court adjudication (citing Gulf Offshore Co. v Mobil Oil Corp., 453 US 473, 477-478). Further, that “‘the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.’ ” (Greenview Trading Co. v Hershman & Leicher, supra, at p 155.)
Therein, the court found concurrent jurisdiction as the presumption was left unrebutted. Similarly, in the case at bar, plaintiff has set forth only conclusory allegations insufficient to rebut the presumption cited. Thus, defendant has properly asserted a private cause of action under RICO in a State court.
Having determined that this court has subject matter jurisdiction, the issue becomes whether or not the counterclaim states a cause of action under RICO.
At bar, defendant alleges a scheme by plaintiff Simpson and third-party defendant Silverman, with respect to the electrical work done at 315 Park Avenue South (Premises) by Simpson. Defendant alleges that Silverman, as president and majority shareholder of Grand White Realty (the owner of the Premises), *314 obtained loans from Leucadia on behalf of Grand White to pay the bills and invoices submitted by Simpson. That Silverman knew those bills and invoices were inflated, however in return for payments by Simpson, he nevertheless arranged for the loans, giving, as security, mortgages on the Premises. In February, 1982, a judgment of foreclosure and sale was entered v/ith respect to the premises in favor of Leucadia and it was sold at public auction. In October, 1982, a deficiency judgment was entered in favor of Leucadia and against Grand White in an amount in excess of $10,000,000.
Defendant alleges that Simpson and Silverman used the United States mail to execute their scheme and committed at least two acts of mail fraud. Additionally, that Simpson, Silver-man and Grand White were an “enterprise” as defined in subdivision (4) of section 1961 of title 18 of the United States Code. That the activities of that enterprise affected interstate commerce and that Simpson participated in the conduct of the enterprise’s affairs through a pattern of racketeering activity in violation of section 1962 of title 18 of the United States Code.
Section 1964 of title 18 of the United States Code provides for civil remedies and subdivision (c) a private cause of action for treble damages for “[a]ny person injured in his business or property by reason of a violation of section 1962”.*
Section 1962, entitled “Prohibited activities”, provides:
“(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity of the collection of an unlawful debt after such *315 purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
“(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
“(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity or collection of unlawful debt.
“(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section.”
At bar, the plaintiff has been “accused” of violating subdivision (c) of section 1962 by conducting the affairs of an enterprise through a pattern of racketeering.
As respectively defined in subdivisions (1), (4) and (5) of section 1961:
“(1) ‘racketeering activity’ means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal *316 gambling businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2341-2346 (relating to trafficking in contraband cigarettes), sections 2421-24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States * * *
“(4) ‘enterprise’ includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;
“(5) ‘pattern of racketeering activity’ requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity”.
Although the statute on its surface seems to allow private suits for people injured by defendants who have committed two so-called predicate acts, three recent decisions from the United States Circuit Court of Appeals have held otherwise. (Sedima, S.P.R.L. v Imrex Co., 741 F2d 482; Bankers Trust Co. v Rhoades, 741 F2d 511; Furman v Cirrito, 741 F2d 524.)
In Sedima {supra, at pp 502-503), the court, for the first time, imposed the requirement that a prior conviction on the underlying predicate acts is a prerequisite to a private civil action.
Therein, the court examined the legislative history of the statute and concluded “there is simply no evidence that in creating RICO, Congress intended to create the broad civil cause of action that the reading of the statute by its proponents would allow.” (Sedima, S.P.R.L. v Imrex Co., supra, p 487.)
The court’s analysis focuses upon the fact that RICO was “intended not simply to provide additional remedies for already compensable injuries, but rather to provide added remedies and procedures to fight certain specific kinds of organized criminality.” (Sedima, S.P.R.L. v Imrex Co., supra, p 494.) The Circuit Court’s interpretation of the language used in section 1964, “by reason of a violation of [§] 1962”, would require plaintiffs not only to allege an injury caused by an activity which RICO was designed to deter but to show injury different in kind from that *317 occurring as a result of the predicate acts themselves (i.e., an injury not simply caused by the predicate acts). As justification for their requirement of a “racketeering injury,” the court elaborated on the Legislature’s intent to stem the tide of infiltration by organized crime into legitimate businesses. “RICO was not enacted merely because criminals break laws, but because mobsters, either through the infiltration of legitimate enterprises or through the activities of illegitimate enterprises, cause systemic harm to competition and the market, and thereby injure investors and competitors. It was to help solve this problem that Congress added RICO to the arsenal of weapons used to fight organized crime. It is only when injury caused by this kind of harm can be shown, therefore, that we believe that Congress intended that standing to sue civilly should be granted.” (Sedima, S.P.R.L. v Imrex Co., supra, at pp 495-496.)
As a further basis for their decision, the court indicated that the civil RICO liability was quasi-criminal and repeatedly expressed their fear of the ordinary, businessman being stigmatized by being labeled a racketeer.
It should be noted that Justice Cardamone’s dissent in Sedima (supra) and the court’s opinion in Furman (supra) present cogent and well-reasoned arguments against the imposition of the prior conviction requirement.
Disagreeing with the majority’s interpretation of the statutory language, Justice Cardamone questions the majority’s conclusion that “Congress * * * did not intend to give civil courts power to determine whether an act is ‘indictable’ absent a properly returned indictment or ‘chargeable’ absent an information.” (Sedima, S.P.R.L. v Imrex Co., supra, at p 505.) “To begin, the words themselves connote the contrary — i.e., Congress did not use the phrase ‘for which an indictment or information has been returned or filed’-, much, less did it say ‘for which the defendant has been criminally convicted.’ More significantly, Congress clearly used the terms ‘indictable’ or ‘chargeable’ in reference to ‘acts’ forming a pattern of racketeering activity under § 1961, to which sanctions specifically labelled as ‘civil remedies’ were then directed. To stretch this language into a requirement that a prior conviction must be obtained strains credulity. Had that been Congress’ aim, § 1964’s title would have been ‘Post Criminal Conviction Civil Remedies,’ not ‘Civil Remedies.’” (Sedima, S.P.R.L. v Imrex Co., supra, at p 505.)
In addition, the dissent raises the issue of whether it is the responsibility of the judiciary or the Legislature to set the *318 parameters of statute. “To cast a net sufficiently wide to catch organized criminals, Congress took the calculated risk that others, whose activities are chargeable as crimes under other federal or state laws, would also be netted. Courts should not ‘creat[e] standing requirements that would preclude liability in many situations in which legislative intent would compel it.’ ” (Sedima, S.P.R.L. v Imrex Co., supra, p 510.)
In Furman (supra), the court affirmed the lower court’s dismissal of a civil RICO action noting, however, that it did so only upon constraint of Sedima (supra) and Bankers Trust (supra). The panel in Furman (supra) did issue an opinion in which they expressed their disagreement with the majority views in those two cases and reaffirmed the views expressed by Judge Cardamone. ,
Although this court finds the requirement of a prior conviction somewhat troubling, there is no doubt that the instant case does not fall within the purview of the RICO statute. “[T]he purpose of [section] 1964(c) was not to transform state law violations into federal violations”. (North Barrington Dev. v Fanslow, 547 F Supp 207, 210.)
The facts at bar are a prime example of the explosion of civil RICO actions, unrelated to the statute’s purpose, which attempt to generate treble damages.
Now, as to the defendant’s sixth counterclaim, the court finds Simpson’s contention to be without merit. A review of the defendant’s amended answer reveals that the allegations in the sixth counterclaim are based upon common-law fraud and not a RICO violation. Therefore, that branch of plaintiff’s motion seeking dismissal of defendant’s sixth counterclaim is denied.
Accordingly, motion to dismiss the defendant’s fifth counterclaim is granted, motion to dismiss the defendant’s sixth counterclaim is denied.

 Subdivision (c) of section 1964 of title 18 of the United States Code provides: “Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney’s fee.”