SIMPSON ELECTRIC CORPORATION, Respondent, v LEUCADIA, INC., Defendant and Third-Party Plaintiff-Appellant, et al., Defendant, et al., Third-Party Defendant.

Second Department, May 18, 1987

340

## APPEARANCES OF COUNSEL

*Butler, Fitzgerald & Potter, P. C. (Raymond Fitzgerald, Andrew W. Sidman* and *Deborah Doty* of counsel), for appellant.

*Barr & Faerber (Joseph J. Haspel* of counsel), for respondent.

## OPINION OF THE COURT

THOMPSON, J. P.

The issue with which we are confronted on this appeal is a question of first impression in this judicial department: whether State courts enjoy concurrent jurisdiction with Federal courts over civil claims under the Racketeer Influenced and Corrupt Organizations Act (hereinafter RICO) (18 USC §§ 1961-1968). We find that the structure and language of that Act, viewed together with its legislative history and underlying policies, leads to the inexorable conclusion that Congress implicitly intended to confer exclusive jurisdiction over RICO claims on the Federal courts. Therefore, we affirm the order of Special Term (126 Misc 2d 312) dismissing the fifth counterclaim of Leucadia, Inc., alleging a RICO violation.

This action arises out of an agreement between Simpson Electric Corporation (hereinafter Simpson) and Leucadia, Inc., formerly known as James Talcott, Inc. (hereinafter Leucadia) for the provision of electrical contracting work in connection with the renovation of a building located at 315 Park Avenue South in Manhattan (hereinafter the premises). The premises were owned and operated by the defendant Grand-White

Realty Corporation (hereinafter Grand-White) and the third-party defendant Isaac Silverman (hereinafter Silverman), who was Grand-White's president and majority shareholder. Leucadia held a mortgage on the premises. In May 1984, Simpson commenced an action to recover damages in excess of $13,000,000, *inter alia,* for the balance due on electrical renovation work under the contract. In its answer, Leucadia denied the essential allegations of the complaint and interposed six counterclaims. The fifth counterclaim, which is the subject of this appeal, alleged a RICO violation. Leucadia asserted that Simpson, Silverman and Grand-White were an "enterprise", as that term is defined in 18 USC § 1961 (4), which was engaged in a pattern of racketeering activity affecting interstate commerce in violation of 18 USC § 1962. The gravamen of Leucadia's RICO claim is that Silverman and Simpson engaged in a fraudulent scheme whereby Silverman obtained loans from Leucadia to pay bills and invoices submitted by Simpson. Although Silverman knew the bills and invoices were highly inflated, he induced Leucadia to make loans and gave Leucadia mortgages on the premises as security. In return, Simpson made substantial payments to Silverman personally. As predicate acts, Leucadia alleged that Simpson used the United States mail to execute the scheme and committed at least two acts of mail fraud, thereby engaging in a pattern of racketeering activity in violation of 18 USC § 1962. In February 1982, Leucadia obtained a judgment of foreclosure and sale, and the premises was sold at public auction. In October 1982, a deficiency judgment was entered in favor of Leucadia and against Grand-White in an amount in excess of $10,000,000.

Simpson moved, *inter alia,* to dismiss the RICO counterclaim on the ground that the court lacked subject matter jurisdiction over that claim. Special Term dismissed the RICO counterclaim. Initially, it found that State courts have concurrent jurisdiction with Federal courts over civil RICO claims. Notwithstanding this jurisdictional determination, Special Term dismissed the RICO counterclaim in reliance upon the July 25, 1984 decision of the United States Circuit Court of Appeals for the Second Circuit in *Sedima, S.P.R.L. v Imrex Co.* (741 F2d 482), which held that a prior criminal conviction of the predicate act is a prerequisite to a civil RICO action. On July 1, 1985, the United States Supreme Court reversed the Second Circuit in *Sedima, S.P.R.L. v Imrex Co.* (473 US 479). In its decision, the Supreme Court admonished that RICO is to

be read and applied broadly and liberally to " 'effectuate its remedial purposes' " *(Sedima, S.P.R.L. v Imrex Co.,* 473 US 479, 498, *supra,* quoting from Pub L 91-452, § 904 [a], 84 US Stat 947). It held that no prior predicate criminal conviction was necessary in order to establish a prima facie case under RICO, nor does RICO require proof of a " 'racketeering injury' " *(Sedima, S.P.R.L. v Imrex Co., supra,* at 498-499). To prove a claim under 18 USC § 1962 (c), a party must demonstrate (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity *(Sedima, S.P.R.L. v Imrex Co., supra,* at 500). We do not address our inquiry to the question of whether Leucadia, in its fifth counterclaim, has sufficiently pleaded a cause of action under 18 USC § 1962 (c). This issue is rendered moot by our determination that RICO claims fall within the exclusive jurisdiction of the Federal courts.

Simpson argues on appeal that Special Term properly dismissed Leucadia's fifth counterclaim because State courts lack subject matter jurisdiction over civil claims under RICO. In support of its contention, the plaintiff relies upon a May 1985 decision of the Appellate Division, First Department, in *Greenview Trading Co. v Hershman & Leicher* (108 AD2d 468), finding that Federal jurisdiction over RICO claims is exclusive.

In our analysis of the jurisdictional question, we indulge the presumption in favor of concurrent jurisdiction announced by the Supreme Court over a century ago in *Claflin v Houseman* (93 US 130), and reaffirmed, more recently, in the seminal case of *Gulf Offshore Co. v Mobil Oil Corp.* (453 US 473). Absent a congressional provision precluding concurrent jurisdiction or a disabling incompatibility between the Federal claim and adjudication of that claim in a State court, State courts may assume subject matter jurisdiction over Federal causes of action *(see, Gulf Offshore Co. v Mobil Oil Corp., supra,* at 477).

Despite the presumption of concurrent jurisdiction, Congress may confine jurisdiction either explicitly or implicitly. Specifically, the presumption of concurrent jurisdiction may be rebutted by (1) an explicit statutory directive, (2) an unmistakable implication from legislative history, or (3) a clear incompatibility between Federal interests and State court jurisdiction *(Gulf Offshore Co. v Mobil Oil Corp., supra,* at 478). The factors that generally commend exclusive Federal court jurisdiction over Federal claims under the latter possibility, i.e., "clear incompatibility", include "the desirability of

uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims" *(Gulf Offshore Co. v Mobil Oil Corp., supra,* at 478, 483-484).

These principles of law are not disputed by the parties; it is their application to the RICO Act which represents the point of departure of the parties' opposing claims and also that of the views expressed in this majority opinion with those of our dissenting colleagues.

Looking first at the language of that provision of the RICO Act which creates the civil remedy for private litigants and also confers jurisdiction on Federal courts, noticeably absent is either any explicit limitation of jurisdiction to the Federal courts or a grant of concurrent jurisdiction to the State courts *(see,* 18 USC § 1964 [c]). That section provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee" (18 USC § 1964 [c]). Thus, the first factor of the *Gulf Offshore* framework is absent here and the starting point of our analysis must necessarily be an examination of the language, structure, legislative history and underlying policies of the RICO Act to determine whether Congress implicitly restricted jurisdiction.

The question of whether State courts have concurrent jurisdiction with the Federal courts to hear and decide civil RICO claims has not been widely litigated. In fact, to date, no Federal appellate court has considered the question[1] and the only appellate decision in this State emanates from the First Department *(see, Greenview Trading Co. v Hershman & Leicher,* 108 AD2d 468, *supra).* Such limited Federal and State authority as exists has been sharply divided.[2] Courts finding exclusive Federal jurisdiction primarily rely on the factors

---

1. In *County of Cook v Midcon Corp.* (574 F Supp 902, *affd* 773 F2d 892, 905, n 4), the United States Circuit Court of Appeals for the Seventh Circuit refused to address the exclusivity issue but voiced its doubts whether, in light of the presumption of concurrent jurisdiction, RICO jurisdiction is exclusively Federal.

2. Compare *Spence v Flynt* (647 F Supp 1266 [D Wyo 1986]); *Broadway v San Antonio Shoe* (643 F Supp 584 [SD Tex 1986]); *Massey v City of Oklahoma City* (643 F Supp 81 [WD Okla 1986]); *Kinsey v Nestor Exploration—1981A* (604 F Supp 1365 [ED Wash 1985]); *County of Cook v Midcon Corp.* (574 F Supp 902 [ND Ill 1983], *affd* 773 F2d 892 [7th Cir 1985]); *Thrall Car Mfg. Co. v Lindquist* (145 Ill App 3d 712, 495 NE2d 1132); *Levinson v*

discussed below. First, Congress consciously patterned the RICO Act *(see,* 18 USC § 1964 [c]) after the private remedy provision of section 4 of the Clayton Antitrust Act *(see,* 15 USC § 15). Courts uniformly have held that the latter provision confers exclusive Federal jurisdiction for claims arising under it. On the basis of the virtually identical language of RICO and its antitrust prototype, the District Court in *County of Cook v Midcon Corp.* (574 F Supp 902, *affd* 773 F2d 892), held that the jurisdictional grant in the RICO Act created exclusive jurisdiction in the Federal courts over civil RICO claims *(see, County of Cook v Midcon Corp., supra,* at 912). The *Midcon* court reasoned that the legislators must have known that the language of the Clayton Act had consistently been construed as giving Federal courts exclusive jurisdiction over antitrust claims. By parity of reasoning, therefore, the legislators must have likewise intended that RICO claims should be the exclusive province of the Federal courts.

Adopting the reasoning of *Midcon (supra),* our colleagues in the First Department in *Greenview Trading Co. v Hershman & Leicher (supra,* at 470-471) reached the same result, also predicating their determination on the identity of language between 18 USC § 1964 (c) and 15 USC § 15.

Quite apart from the arguments in favor of exclusive jurisdiction founded upon the antitrust prototype, other specific aspects of the structure and language of the statutory scheme further demonstrate that Congress envisioned only Federal enforcement of RICO claims. The predicate acts upon which a RICO action may be premised are defined generally in terms of substantive Federal crime *(see,* 18 USC § 1961). RICO statutes also include procedural mechanisms which are available only in the Federal system. Section 1965 (18 USC § 1965) contains extended venue and process provisions applicable only in the Federal courts. Additionally, the power to compel forfeiture and divestment is limited to the Federal District Courts, with authority specifically delegated to the Attorney

*American Acc. Reinsurance Group* (503 A2d 632 [Del Ch]); *Maplewood Bank & Trust Co. v Acorn, Inc.* (207 NJ Super 590, 504 A2d 819); *Main Rush Assocs. v Interior Space Constructors* (699 SW2d 305 [Tex Civ App]); *Greenview Trading Co. v Hershman & Leicher* (108 AD2d 468), all holding that Federal courts have exclusive jurisdiction, with *HMK Corp. v Walsey* (637 F Supp 710 [ED Va 1986]; *Karel v Kroner* (635 F Supp 725 [ND Ill 1986]); *Kurz Co. v Lombardi* (595 F Supp 373 [ED Pa 1984]); *Luebke v Marine Natl. Bank* (567 F Supp 1460 [ED Wis 1983]); *Cianci v Superior Ct. (Poppingo)* (40 Cal 3d 903, 221 Cal Rptr 575, 710 P2d 375), all holding that State courts have concurrent jurisdiction.

General of the United States to seize the forfeited property *(see,* 18 USC § 1964 [a]; §§ 1966, 1968). It seems clear that by expanding the procedural abilities of the Federal courts, Congress envisaged a scheme whereby prosecution of racketeering activities and the private litigation arising thereunder would be within the exclusive domain of the Federal courts. Thus, viewing RICO broadly, several courts have found that an unmistakable inference of intended Federal exclusive jurisdiction is created thereunder *(see, Kinsey v Nestor Exploration— 1981A,* 604 F Supp 1365, 1370-1371; *Cianci v Superior Ct. [Poppingo],* 40 Cal 3d 903, 925-931, 221 Cal Rptr 575, 588-592, 710 P2d 375, 389-392 [Lucas, J., concurring and dissenting]; *Main Rusk Assocs. v Interior Space Constructors,* 699 SW2d 305, 306 [Tex Civ App]). We adopt those findings and conclude that the States, with their more truncated jurisdictional powers, are ill-equipped to match the effectiveness of the Federal courts in combating the infiltration of organized crime into legitimate businesses.

Turning then to the last element involved in the *Gulf Offshore* analysis, i.e., demonstration of a clear incompatibility between Federal interests and State court jurisdiction, the broad purpose of RICO, namely, to aid in eliminating organized crime in the United States *(see, United States v Turkette,* 452 US 576, 589), is best served by exclusive Federal court jurisdiction. Because RICO is designed to protect the public interest of the Nation as a whole from the effects of organized crime, it is more properly the subject of enforcement by the Federal courts. To inject the State courts into the fray when interpretation of RICO has already diverged greatly in the Federal courts would only compound an extremely complex situation. The reasoning of Justice (now Chief Justice) Lucas, concurring and dissenting in *Cianci v Superior Ct. (Poppingo)* (40 Cal 3d 903, 925-931, 221 Cal Rptr 575, 588-592, 710 P2d 375, 388-392, *supra),* in this regard, is compelling. Justice Lucas promotes a finding of exclusive Federal jurisdiction as necessary to ensure a more uniform approach to the interpretation and application of RICO *(see, Cianci v Superior Ct. [Poppingo],* 40 Cal 3d 903, 930, 221 Cal Rptr 575, 591-592, 710 P2d 375, 392, *supra).* While the Federal courts have fared none too well in this regard, the scope of the discordant interpretations emerging from the Federal courts is the most vigorous argument against concurrent jurisdiction for the State courts. At this juncture, the Federal courts are in a far better position to ensure uniformity in interpretation and

application of the extremely complex RICO Act *(accord, Kinsey v Nestor Exploration—1981A, supra,* at 1371; *Maplewood Bank & Trust Co. v Acorn, Inc.,* 207 NJ Super 590, 504 A2d 819, 821; *Levinson v American Acc. Reinsurance Group,* 503 A2d 632, 635 [Del Ch]; *Cianci v Superior Ct. [Poppingo],* 40 Cal 3d 903, 930-931, 221 Cal Rptr 575, 591-592, 710 P2d 375, 391, *supra* [Lucas, J., concurring and dissenting]; *Greenview Trading Co. v Hershman & Leicher,* 108 AD2d 468, 472-473, *supra).*

With regard to any parochial interest in exercising jurisdiction over RICO claims, it is fair to state that New York does not believe its courts have concurrent jurisdiction. This conclusion is derived from New York's recent enactment of an Organized Crime Control Act (hereinafter OCCA) (L 1986, ch 516), an antiracketeering law patterned on the Federal RICO Act. The initiation by the New York State Attorney-General, prior to OCCA's enactment, of a lawsuit in the United States District Court for the Southern District of New York, charging certain individuals and corporations with violations of the Federal RICO Act *(see,* NYLJ, May 29, 1986, at 1, col 3) lends additional weight to this premise. If the State believed otherwise, its legislative efforts in this regard would be merely duplicative and unnecessary *(see, Kinsey v Nestor Exploration —1981A, supra,* at 1370; *Levinson v American Acc. Reinsurance Group, supra,* at 635). Moreover, if the State courts had concurrent jurisdiction, the State Attorney-General would most likely have brought any actions charging RICO violations in a more familiar forum.

OCCA is far more restrictive than its Federal counterpart, thereby evincing this State's interest in limiting its use to appropriate cases. Drawing on the Federal RICO experience and Federal judicial interpretations of RICO's breadth, New York calculatedly narrowed the definition of the requisite pattern of criminal activity for prosecution under OCCA to ensure that the crimes making up the criminal enterprise are not isolated incidents or part of a single criminal transaction *(see,* Governor's Approval Mem, 1986 McKinney's Session Laws of NY, at 3175-3178). Laws of 1986 (ch 516, adding Penal Law § 460.00), which enumerates OCCA's legislative findings, removes any doubt as to whether the Legislature intended to include within its scope garden-variety fraud and breach of contract cases. It provides: "[T]his article is not intended to be employed to prosecute relatively minor or isolated acts of criminality which, while related to an enterprise and arguably part of a pattern as defined in this article, can be adequately

and more fairly prosecuted as separate offenses" (L 1986, ch 516, adding Penal Law § 460.00). Thus, this State's adoption of its own RICO-like statute lends support to the position that a basic incompatibility exists between State court jurisdiction and Federal interests under the RICO Act.

As the foregoing discussion indicates, the core issue presented on this appeal is hotly disputed. However, the counter arguments offered in support of concurrent jurisdiction are less compelling than those militating in favor of exclusive jurisdiction. Our dissenting colleagues place great stock in the recent decision of the United States Supreme Court in *Sedima, S.P.R.L. v Imrex Co.* (473 US 479, *supra*), claiming that "[i]n the aftermath of *Sedima*, we can no longer, with assurance, analogize RICO with the antitrust legislation" (dissenting opn, at 353). The dissent perceives the decision in *Sedima* as casting doubt upon the continued viability of *Greenview Trading Co. v Hershman & Leicher (supra)*, a pre-*Sedima* decision. We do not read *Sedima* quite so broadly. The *Sedima* majority touches on the debate about the extent to which Congress intended to pattern RICO provisions upon Federal antitrust laws *(see, Sedima, S.P.R.L. v Imrex Co., supra,* at 498-499). However, it appears that the only conclusion reached upon its review of the legislative history is that the antitrust principles defining the proximity between a plaintiff's injury and a defendant's antitrust violation were not intended by Congress to be grafted onto the RICO's provisions. As our dissenting colleagues acknowledge, *Sedima* did not address the jurisdictional question.

We are cognizant that the position on this issue espoused by the dissent finds some support in the decisional law. Some courts believe that the analogy between RICO and Federal antitrust legislation is too weak to overcome the normal presumption of concurrent jurisdiction *(see, HMK Corp. v Walsey,* 637 F Supp 710, 717; *Karel v Kroner,* 635 F Supp 725, 730; *Cianci v Superior Ct. [Poppingo],* 40 Cal 3d 903, 912-914, 221 Cal Rptr 575, 579-580, 710 P2d 375, 379-380, *supra; County of Cook v Midcon Corp.,* 773 F2d 892, 905, n 4, *supra).* Notwithstanding these views to the contrary, there can be little doubt, even after *Sedima,* that Congress utilized the Clayton Act as a model for RICO and intended to adopt the antitrust remedies such as civil actions and treble damages. The virtual identity of jurisdictional language in the RICO Act *(see,* 18 USC § 1964 [c]) and the jurisdictional provision of the Clayton Act *(see,* 15 USC § 15) may not be discounted as

being either accidental or meaningless. Because it may reasonably be presumed that Congress, when drafting RICO, had knowledge that judicial interpretations of the virtually identical provisions of the Clayton Act conferred exclusive jurisdiction on the Federal courts, the analogy to antitrust law compels a similar conclusion at bar *(see, County of Cook v Midcon Corp.,* 574 F Supp 902, 912, *affd* 773 F2d 892, *supra; see also, Levinson v American Acc. Reinsurance Group,* 503 A2d 632, 635, *supra).*

Neither our dissenting colleagues nor the courts which have determined that the States have concurrent jurisdiction over RICO claims have directly addressed the extensive reference throughout the RICO Act to Federal enforcement. RICO has not and, indeed, cannot similarly extend to the States the broad procedural and jurisdictional boundaries which it accords the Federal courts.

With reference to the clear incompatibility between State and Federal jurisdiction, the third factor in our analysis, the dissent focuses on the fact that RICO predicate offenses incorporate violations of State as well as Federal law. They also return to the *Sedima* analysis which recognized that RICO is frequently applied to ordinary fraud and breach of contract actions. However, what this argument overlooks is that several of the predicate acts are within the exclusive province of the Federal courts. Thus, concurrent jurisdiction would involve the State courts in the complex interpretation of the underlying Federal law which has divided the Federal courts. State courts lack expertise in these areas and will not contribute to the uniform interpretation of the RICO statutes *(see, Kinsey v Nestor Exploration—1981A,* 604 F Supp 1365, 1371, *supra; Greenview Trading Co. v Hershman & Leicher,* 108 AD2d 468, 472, *supra).*

Application of RICO to cases not anticipated by Congress does not detract from the arguments militating in favor of exclusive Federal jurisdiction. The fact that RICO has been applied to a wide breadth of situations does not alter the original congressional intent. Even the Supreme Court in *Sedima* acknowledged that "in its * * * civil version, RICO is evolving into something quite different from the original conception of its enactors" *(Sedima, S.P.R.L. v Imrex Co.,* 473 US 479, 500, *supra).* The fact that the courts give a more expansive interpretation to civil RICO than what Congress intended does not, therefore, validate a finding of concurrent jurisdiction contrary to congressional intent. To infer such an

intent to give State courts jurisdiction would be untenable in view of the recognized purpose of Congress in enacting the RICO statute, i.e., to strengthen Federal law enforcement efforts to stamp out organized crime in the United States.

In sum, we conclude that Federal jurisdiction over civil RICO claims is exclusive. The structure, language and legislative history of the RICO Act demonstrates that Congress implicitly granted exclusive jurisdiction to the Federal courts. Moreover, the broad purpose of RICO as an aid in eliminating organized crime in the United States will best be served by exclusive Federal jurisdiction which will facilitate uniformity of interpretation and application. The provisions of New York's OCCA serve to pinpoint the basic incompatibility between Federal interests and State court jurisdiction.

Accordingly, the order of Special Term dismissing the defendant Leucadia's fifth counterclaim alleging a RICO violation should be affirmed.

SPATT, J. (dissenting). I respectfully dissent and vote to reverse the order of Special Term (126 Misc 2d 312) insofar as appealed from, and deny the plaintiff's motion to dismiss the fifth counterclaim of Leucadia, Inc. (hereinafter Leucadia). Leucadia has sufficiently pleaded a civil cause of action under the Racketeer Influenced and Corrupt Organizations Act (hereinafter RICO; 18 USC §§ 1961-1968). Further, in my view, State courts have concurrent jurisdiction with Federal courts with regard to civil RICO claims.

Any discussion of concurrent jurisdiction must start with the seminal case of *Gulf Offshore Co. v Mobil Oil Corp.* (453 US 473). As clearly set forth in *Gulf Offshore,* the basic principle of law is that there is a "presumption that state courts enjoy concurrent jurisdiction" *(Gulf Offshore Co. v Mobil Oil Corp., supra,* at 478). The rule is stated as follows:

"The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication. *Dowd Box Co.* v. *Courtney,* 368 U. S. 502, 507-508 (1962); *Claflin* v. *Houseman,* 93 U. S. 130, 136 (1876) * * *

"In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. See

*California* v. *Arizona,* 440 U. S. 59, 66-67 (1979); *Dowd Box Co.* v. *Courtney,* 368 U. S., at 507-508" *(Gulf Offshore Co. v Mobil Oil Corp.,* 453 US 473, 477-478, *supra).*

A determination that Federal courts exercise exclusive jurisdiction over claims arising under a Federal statute must be based upon a finding that the statute falls under an exception to the general rule that State courts exercise concurrent jurisdiction with Federal courts over such claims *(see, Dowd Box Co. v Courtney,* 368 US 502, 507-508, *supra).* Congressional silence supports the presumption of concurrent jurisdiction *(see, Claflin v Houseman,* 93 US 130). In the absence of an explicit statutory directive, we must look to the legislative history of the statute to determine if Congress was, indeed, silent on the matter *(see, Dowd Box Co. v Courtney, supra,* at 508).

In *Gulf Offshore Co. v Mobil Oil Corp. (supra),* the Supreme Court provided definitive guidance to courts in determining the question of concurrent State jurisdiction when it held that the presumption of concurrent jurisdiction can be rebutted by: (1) an explicit statutory directive, (2) an unmistakable implication from legislative history, or (3) a clear incompatability between State court adjudication and Federal interests *(see, Gulf Offshore Co. v Mobil Oil Corp., supra,* at 478). Unless one of these three exceptions pertains to the civil RICO, the State courts have concurrent jurisdiction. I find no such exception present in civil RICO.

ABSENCE OF EXPLICIT STATUTORY DIRECTIVE

A review of the statute reveals that RICO contains no explicit statutory directive mandating exclusive jurisdiction. The RICO Act does not require that suits *must* be brought in Federal District Court. It is settled law that a grant of jurisdiction to a Federal court does not oust a State court from concurrent jurisdiction over the cause of action *(see, Gulf Offshore Co. v Mobil Oil Corp., supra).* The use of the permissive "may" with reference to bringing suit in Federal court has been held to mitigate against exclusive Federal jurisdiction and is consistent with concurrent State court jurisdiction *(see, Gulf Offshore Co. v Mobil Oil Corp., supra,* at 477; *Lane v Central Bank,* 756 F2d 814; *Kelly v Director, Fed. Emergency Mgt. Agency,* 549 F Supp 8; *Bains v Hartford Fire Ins. Co.,* 440 F Supp 15).

Although RICO abounds with references to Federal entities such as "United States", "Attorney General", and "district

court" (18 USC § 1961 *et seq.)*, indicating that Congress may have had Federal jurisdiction in mind when it drafted RICO, Congress did not include an *explicit* statutory directive providing for exclusive Federal jurisdiction in 18 USC § 1964 (c). Congress has provided for exclusive Federal jurisdiction in other Federal statutes. For example, in the Federal Tort Claims Act (28 USC § 1346 [b]), the statute provides that "the district courts * * * shall have *exclusive jurisdiction of civil actions"* (emphasis supplied). The Securities Exchange Act of 1934 (15 USC § 78aa) states that "[t]he district courts of the United States * * * shall have *exclusive jurisdiction* of violations of this title" (emphasis supplied; *see also,* 29 USC § 1001 [Employee Retirement Income Security Act]; 7 USC § 13a-2 [Commodity Exchange Act]; 47 USC § 407 [Communications Act]; 28 USC § 1333 [jurisdiction of Federal District Courts in admiralty cases]).

Since civil RICO does not contain an explicit statutory directive requiring exclusive Federal jurisdiction, this court must then focus its attention upon the statute's legislative history to determine whether there is evidence of unmistakable legislative intent, either express or implied, to rebut the presumption of concurrent jurisdiction.

### ABSENCE OF UNMISTAKABLE LEGISLATIVE INTENT

Discerning the intent of Congress, let alone its unmistakable intent regarding subject matter jurisdiction over civil RICO claims, is difficult due to the convoluted legislative histories available. The history of the RICO Act gives little hint of the intended scope of private civil RICO actions *(see, Sedima, S.P.R.L. v Imrex Co.,* 741 F2d 482, 488, *revd on other grounds* 473 US 479; *see also* Blakey and Gettings, *Racketeer Influenced and Corrupt Organizations [RICO]: Basic Concepts —Criminal and Civil Remedies,* 53 Temple LQ 1009). It appears that Congress may not have considered the jurisdictional issue. As stated by G. Robert Blakey, the chief counsel to the Senate Subcommittee on Criminal Law and Procedure, which proposed RICO: " 'There is nothing on the face of the statute or in the legislative history' that touches on the question of concurrent jurisdiction * * * 'To my knowledge, no one even thought of the issue' ". Professor Blakey also stated that the RICO Act draws deeply on the Federal antitrust law as a model, and " 'the antitrust law is an exclusive-jurisdiction statute' ". He also observed that " '[h]ad anyone brought up the question' " of State court jurisdiction, " 'we

would have said no' " (Flaherty, *Two States Lay Claim to RICO,* Natl LJ, May 7, 1984, at 10, col 2 [quoting Professor Blakey]).

Those courts which have held that there is exclusive Federal jurisdiction point to congressional fashioning of RICO after section 4 of the Clayton Antitrust Act (15 USC § 15), which has been construed to confer exclusive jurisdiction upon Federal courts *(see, Blumenstock Bros. v Curtis Publ. Co.,* 252 US 436). On the basis of the analogy between RICO and the antitrust legislation, the Appellate Division, First Department, in *Greenview Trading Co. v Hershman & Leicher* (108 AD2d 468), a thoughtful decision rendered prior to and without the benefit of the illuminating concepts set forth in *Sedima, S.P.R.L. v Imrex Co. (supra),* held that RICO was intended by Congress to confer exclusive jurisdiction upon the Federal courts.* Relying in part upon the analysis in *County of Cook v Midcon Corp.* (574 F Supp 902, *affd* 773 F2d 892), the court in *Greenview* stated that the RICO language was drawn almost verbatim from the Clayton Act which has long been recognized as requiring exclusive Federal jurisdiction. The court noted with approval the following portion of the opinion in *County of Cook v Midcon Corp. (supra):* " 'Moreover, it is well established that the identity in language between 18 U.S.C. § 1964 (c) and 15 U.S.C. § 15 is not a mere happenstance; Congress consciously patterned the RICO section after the antitrust prototype. *See, e.g.,* 115 Cong. Rec. 6992, 6993 (1969) (statement of Sen. Hruska). Legislators must have known that courts have construed virtually identical language as giving federal courts exclusive jurisdiction over antitrust claims. It would be anomalous for this court to hold that the jurisdictional grant in the RICO statute did anything other than create exclusive federal jurisdiction over civil claims by persons injured by violations of 18 U.S.C. § 1962' " *(Greenview Trading Co. v Hershman & Leicher, supra,* at 471, quoting from *County of Cook v Midcon Corp.,* 574 F Supp 902, 912, *affd* 773 F2d 892, *supra).* The *Greenview* court concluded that Congress "did not intend to involve State courts so deeply in the interpretation of a host of Federal statutes" *(Greenview Trading Co. v Hershman & Leicher, supra,* at 473).

Significantly, *Greenview (supra)* was decided prior to the

---

* See also, *Belfont Sales Corp. v Gruen Indus.* (112 AD2d 96), which followed *Greenview Trading Co. v Hershman & Leicher* (108 AD2d 468) in deciding that there was exclusive Federal jurisdiction.

Supreme Court's decision in *Sedima* which questioned RICO's relationship to the antitrust laws and which altered many of the basic assumptions regarding RICO litigation. Discussing the relationship between RICO and the antitrust acts, Justice White, in *Sedima,* stated: "It is also significant that a previous proposal to add RICO-like provisions to the Sherman Act had come to grief in part precisely because it 'could create inappropriate and unnecessary obstacles in the way of * * * a private litigant [who] would have to contend with a body of precedent—appropriate in a purely antitrust context—setting strict requirements on questions such as "standing to sue" and "proximate cause." ' 115 Cong. Rec. 6995 (1969) (ABA comments on S. 2048); see also *id.,* at 6993 (S. 1623 proposed as an amendment to Title 18 to avoid these problems). In borrowing its 'racketeering injury' requirement from antitrust standing principles, the court below created exactly the problems Congress sought to avoid" *(Sedima, S.P.R.L. v Imrex Co.,* 473 US 479, 498-499, *supra).* In the aftermath of *Sedima,* we can no longer, with assurance, analogize RICO with the antitrust legislation.

Although *Sedima* did not specifically address jurisdictional questions, the Supreme Court held that the private treble damages provision was intended by Congress as " 'a major new tool' " in the fight against crime intended to reach both legitimate and illegitimate enterprises *(Sedima, S.P.R.L. v Imrex Co.,* 473 US 479, 498, *supra,* quoting from 116 Cong Rec 35227). The Supreme Court found RICO to be an act with its own provisions, purpose and history, and viewed it as a separate body of law which is distinct from the antitrust legislation on which RICO's language is modeled.

In *Schacht v Brown* (711 F2d 1343), the Seventh Circuit also reviewed the relationship between RICO and the antitrust acts and determined that RICO goes beyond the antitrust statutes. The court stated that "Congress * * * enacted RICO as a separate tool * * * The structural similarity of the RICO civil damages apparatus to that contained in the antitrust laws does not persuade us otherwise". It further observed that "analogies to that body of law (antitrust) become increasingly irrelevant" *(Schacht v Brown, supra,* at 1357-1358).

It is noteworthy that another statute containing virtually the identical language as 18 USC § 1964 (c) was described as a " 'valuable supplement' " *(see, Lane v Central Bank,* 756 F2d 814, 817, quoting from 1970 US Code Cong & Admin News 5519, 5559) to the antitrust laws and yet, was found to confer

concurrent jurisdiction. In *Lane v Central Bank* (756 F2d 814, *supra)*, it was construed that the antitying provisions of the Bank Holding Company Act (12 USC § 1971) provided for concurrent jurisdiction. Thus, the mere similarity between civil RICO and the antitrust laws is not a reliable indicator of legislative intent concerning exclusivity of Federal jurisdiction.

Interpreting RICO independently from the Sherman and Clayton Antitrust Acts, I find no "unmistakable implication" *(Gulf Offshore Co. v Mobil Oil Corp.*, 453 US 473, 478, *supra)* from the legislative history of RICO sufficient to overcome the presumption of concurrent jurisdiction. In *County of Cook v Midcon Corp.* (773 F2d 892), which was decided in the light of *Sedima (supra)* and *Schacht v Brown (supra)*, the Seventh Circuit stated in a footnote: "We doubt whether the analogy to antitrust law is sufficiently strong to conclude that because jurisdiction over antitrust cases is exclusively federal, RICO jurisdiction necessarily must follow suit * * * Particularly in light of the normal presumption that state courts share concurrent jurisdiction over federal statutes, we would be reluctant to conclude from congressional silence that Congress intended to depart from the usual rule" *(County of Cook v Midcon Corp.*, 773 F2d 892, 905, n 4, *supra)*.

One Federal District Court found an unmistakable legislative intent of exclusive Federal jurisdiction on grounds other than an analogy to antitrust legislation. In *Kinsey v Nestor Exploration—1981A* (604 F Supp 1365), the court concluded that every section save for 18 USC § 1964 (c) unmistakably conferred exclusive jurisdiction upon Federal courts. Finding it inappropriate "to dissect a statutory scheme, select one narrow provision thereof, and determine that with respect to that one provision at least, congressional silence is the equivalent of an affirmative grant of jurisdiction to the states", the court held that private civil RICO actions could only be brought in Federal court *(Kinsey v Nestor Exploration—1981A, supra,* at 1370-1371).

However, in *Kinsey (supra)*, the court's decision was grounded on the theory that the purpose of the statute is to halt organized crime, while in *Sedima (supra)*, the statute was given a far broader scope to include within RICO coverage legitimate businesses and the garden-variety fraud case. Further, it should be noted that 18 USC § 1964 (c) is, arguably, one of the most important sections of the entire RICO legislation. It is not unusual for courts to find portions of an act

requiring exclusive Federal jurisdiction and other portions permitting concurrent State jurisdiction *(see, Hathorn v Lovorn,* 457 US 255, 265-268 [Voting Rights Act]; *Safe Workers' Org., Ch. No. 2 v Ballinger,* 389 F Supp 903, 910 [Labor-Management Reporting and Disclosure Act of 1959]).

Another argument not founded upon the similarity between RICO and the antitrust laws put forth by my colleagues is that certain venue and procedural mechanisms contained in various provisions of RICO are applicable only in Federal courts. The subject procedural mechanisms are similar to those found in the antitying provisions of the Bank Holding Company Act (12 USC §§ 1971-1978) which also refer almost exclusively to Federal enforcement. As previously noted, the civil provisions of the Bank Holding Company Act have been found to confer concurrent jurisdiction *(see, Lane v Central Bank,* 756 F2d 814, *supra).* Also of note in this regard is the Petroleum Marketing Practices Act (15 USC §§ 2801-2841), which has repeated references to Federal procedural devices concerning civil suits but has been held to confer concurrent jurisdiction *(see, Ted's Tire Serv. v Chevron U.S.A.,* 470 F Supp 163).

We are here concerned only with whether the States share jurisdiction over civil RICO as set forth in 18 USC § 1964 (c), and, looking at the statute as a whole, I do not find unmistakable legislative intent that Congress intended this provision to be enforceable only in Federal courts.

AS TO INCOMPATABILITY BETWEEN STATE COURT
ADJUDICATION AND FEDERAL INTERESTS

The last leg of the *Gulf Offshore* doctrine requires us to examine the practical implications of civil RICO claims being adjudicated in State courts. This subject is difficult to define and consider since it rests on subjective and sometimes vague policy considerations and is not readily resolved by resort to the case law. The rule is easy to state but difficult to apply. If there is a "clear incompatibility" between State court adjudication and Federal interests *(Gulf Offshore Co. v Mobil Oil Corp.,* 453 US 473, 478, *supra),* the presumption in favor of concurrent jurisdiction is rebutted.

With regard to the nature of the issues involved in civil RICO litigation, in addition to the interpretation of the statute itself, every RICO violation is based upon "predicate acts" *(see,* 18 USC § 1961 [1], for a definition of "racketeering activity"). These predicate acts may consist of State law violations as

well as violations of Federal statutes. As the Supreme Court made clear in *Sedima, S.P.R.L. v Imrex Corp.* (473 US 469, *supra),* garden-variety business fraud may be the basis of a civil RICO action, as it is in the action presently before us. In such cases, predicated upon State law violations or common-law fraudulent conduct by mail or wire, save for the RICO Act itself, the law being interpreted is principally State law.

In December 1985, the Supreme Court of California reviewed both sides of the incompatibility issue in *Cianci v Superior Ct. (Poppingo)* (40 Cal 3d 903, 221 Cal Rptr 575, 710 P2d 375). Writing for the majority, Justice Mosk noted that exclusive Federal jurisdiction may frustrate the purposes of RICO, in that Congress unmistakably intended that 18 USC § 1964 (c) be broadly construed to effectuate its remedial purposes. "Exclusivity would obviously create an obstacle in the way of a private litigant, who would be compelled to bring his RICO claim in federal court even if he preferred a state forum" *(Cianci v Superior Ct. [Poppingo],* 40 Cal 3d 903, 912, 221 Cal Rptr 575, 579, 710 P2d 375, 379, *supra).* Thus, the availability of State courts would facilitate the initiation of civil RICO actions and thereby promote more effective enforcement of the statute. In addition, the flexibility insured by concurrent jurisdiction would enable State court defendants to interpose RICO counterclaims, as in the instant case.

In my view, the State courts can effectively adjudicate all types of civil RICO actions. The New York Supreme Court, as a court of unlimited jurisdiction, has dealt with all strains of fraud cases since the inception of our court system.

In *Gulf Offshore Co. v Mobil Oil Corp.* (453 US 473, 478, *supra),* three factors were set forth which aid in the analysis of whether there would be "clear incompatibility between state-court jurisdiction and federal interests", namely: (1) the desirability of uniform interpretation, (2) the expertise of Federal Judges in Federal law, and (3) the assumed greater hospitality of Federal courts to peculiarly Federal claims *(see, Gulf Offshore Co. v Mobil Oil Corp., supra,* at 483-484; *see also,* Redish and Muench, *Adjudication of Federal Causes of Action in State Courts,* 75 Mich L Rev 311).

RICO violations may be based on a plethora of Federal and State violations which makes the need for a uniform interpretation of RICO less significant than if all RICO actions depended upon the interpretation of the RICO Act or Federal law only. The *Cianci* court concluded that "RICO does not

require uniformity in interpretation and application" *(Cianci v Superior Ct. [Poppingo],* 40 Cal 3d 903, 914, 221 Cal Rptr 575, 580, 710 P2d 375, 380, *supra).*

The expertise of Federal Judges in Federal law is another factor to be considered in determining whether exclusive Federal jurisdiction is required. In *Greenview Trading Co. v Hershman & Leicher* (108 AD2d 468, *supra),* the court found it significant that State court adjudication of RICO claims would require State court Judges to interpret not only RICO but also other Federal substantive laws which may form the basis of the predicate acts in any given RICO action. While this is an important consideration, I do not find it dispositive. As stated in *Cianci:*

"The offenses underlying the RICO cause of action, as noted, include state as well as federal criminal violations. While federal judges must be presumed to have greater expertise over the latter, state judges must be presumed to have greater expertise over the state law violations.

"Third, state judges cannot be deemed unsympathetic to RICO claims. The states plainly share with the federal government the desire to avoid the costs of crime in the marketplace: 23 states have already enacted 'little RICO' statutes, and 6 have such statutes pending * * * Moreover, RICO's predicate offenses include violations of state criminal law; state judges cannot be presumed hostile to claims that may be federal in label only, any more than federal judges would be hostile to claims based on violation of state laws" *(Cianci v Superior Ct. [Poppingo],* 40 Cal 3d 903, 915-916, 221 Cal Rptr 575, 581, 710 P2d 375, 381, *supra).*

Given the fact that civil RICO actions often involve common-law fraud and breach of contract actions, and that in an increasing number of State court cases a RICO claim or counterclaim should properly be interposed, certain civil RICO actions may be more appropriately placed in State court. State courts frequently collaterally decide issues that would otherwise be reserved for the Federal courts, even where there is exclusive Federal jurisdiction *(see, Hathorn v Lovorn,* 457 US 255, *supra; Gulf Offshore Co. v Mobil Oil Corp.,* 453 US 473, 483, n 12, *supra; Andrea Theatres v Theatres Confections,* 787 F2d 59).

The concept advanced in favor of exclusive jurisdiction is the greater hospitality of Federal courts to peculiarly Federal claims. This factor does not apply to many civil RICO actions

whose genesis is in fraud and breach of contract, which matters have been traditionally tried in the State courts. In this regard, it is noted that while fraud actions may technically involve interstate commerce by virtue of an interstate letter or telephone call, many of the cases are the same kind of civil litigation efficiently handled on a daily basis in the State courts.

My colleagues in the majority place great weight upon the recent enactment in New York of a State Organized Crime Control Act (hereinafter OCCA) in support of their position that State courts do not have concurrent jurisdiction in civil RICO cases. The majority contends that if RICO conferred concurrent jurisdiction, the New York State legislative efforts "would be merely duplicative and unnecessary" (majority opn, at 346).

In this regard, we note that the New York OCCA does not contain a provision permitting a private civil cause of action. Unlike RICO, OCCA is essentially a criminal statute with civil sanctions that can only be enforced by the District Attorney. Further, OCCA added Penal Law § 460.30 (7), which provides as follows: "[T]he imposition of a criminal penalty, forfeiture or fine under this section shall not preclude the application of any other criminal penalty or civil remedy under this article or under any other provision of law." Penal Law § 460.30 (8) also provides: "Any payment made as restitution to victims pursuant to this section shall not limit, preclude or impair any liability for damages in any civil action or proceeding for an amount in excess of such payment."

Thus, in our view, OCCA is in no way duplicative or in conflict with civil RICO. OCCA gives the District Attorneys a criminal RICO-like tool that they previously did not have. State courts do not have concurrent jurisdiction with the Federal courts as to the criminal provisions of RICO *(see, e.g., Martin v Hunter's Lessee,* 1 Wheat [14 US] 304, 337), and, accordingly, OCCA was created to fill that void. A holding of concurrent State jurisdiction would, therefore, supplement, not duplicate, the remedies available to combat racketeering, organized crime and business frauds now held to be subject to civil RICO. I therefore conclude that the passage of the New York OCCA does not affect the resolution of this issue.

In sum, I find that State courts are equally competent to adjudicate civil RICO claims. Under the circumstances of this case, and considering all of the relevant factors, adjudicating

civil RICO claims in the courts of this State would not be sufficiently incompatible with Federal interests to warrant a departure from the general rule, mandated by the United States Supreme Court in *Gulf Offshore Co. v Mobil Oil Corp.* (453 US 473, *supra),* that, with respect to a statute such as RICO, State courts share subject matter jurisdiction with the Federal courts.

CONCLUSION

The presumption of concurrent jurisdiction has not been rebutted by explicit statutory directive, unmistakable legislative history or clear incompatibility between State court adjudication and Federal interests. Mindful of our obligation under *Gulf Offshore (supra),* State courts should share subject matter jurisdiction with Federal courts in civil RICO actions.

I therefore would reverse and deny the plaintiff's motion to dismiss the defendant Leucadia's fifth counterclaim based on alleged civil RICO violations.

RUBIN and KUNZEMAN, JJ., concur with THOMPSON, J. P.; SPATT, J., dissents and votes to reverse the order insofar as appealed from, on the law, and deny the branch of the plaintiff's motion which was to dismiss the fifth counterclaim of the appellant, alleging a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO; 18 USC § 1961 *et seq.),* with an opinion in which EIBER, J., concurs.

Ordered that the order is affirmed insofar as appealed from, with costs.